FELKL, Appellant, v. CLASSIFIED RISK INSURANCE CORPO-
RATION and another, Respondents.*

*June 2—June 30, 1964.*

* Motion for rehearing denied, with costs, on September 2, 1964.

For the appellant there were briefs by *Silverstein, Warshafsky & Rotter,* attorneys, and *Ted Warshafsky* and *Michael I. Tarnoff* of counsel, all of Milwaukee, and oral argument by *Mr. Tarnoff.*

For the respondents there was a brief by *Giffin, Simarski & Koch* and *Merton H. Giffin,* all of Milwaukee, and oral argument by *Merton H. Giffin.*

FAIRCHILD, J. The general rule is that an order for a new trial in the interest of justice will be reversed only where the trial court abused its discretion. The rule does not apply, however, where the court proceeded upon an erroneous view of the law.[1]

Sec. 270.49 (2), Stats., provides:

". . . No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein or the memorandum decision setting forth

[1] *Millay v. Milwaukee Automobile Mut. Ins. Co.* (1963), 19 Wis. (2d) 330, 337, 120 N. W. (2d) 103.

such reasons is incorporated by reference in such order. . . ."

It follows that in reviewing such order, we are to examine the reasons stated, in the light of the record, in order to determine whether the order is based on an error of law or is an abuse of discretion. The question is not, of course, whether our reading of the record would lead us to order a new trial, and we recognize and give full weight to the opportunity of the trial court to observe the trial and evaluate the evidence.

The order now before us referred to the reasons set forth in the decision, which consists of a transcription of the court's remarks after hearing argument. We therefore turn to the context of the decision.

The first portion of the court's decision disposed of defendant's claim that as a matter of law there was no evidence to sustain the finding that defendant's negligence caused the collision. The court was of the opinion that causation was a question for the jury even if the affirmative finding were not compelled by the evidence, as a matter of law. The court did make a reference to perversity, but it is not clear at that point whether he was stating a claim of defendant or the court's own conclusion. It is fair to say that the decision as a whole does not suggest that the court found any probability of injustice in the finding that defendant was causally negligent.

It does appear that the order for a new trial was entirely motivated by the court's conclusions with respect to the $10,000 personal injury award.

The court stated that there was not "sufficient credible evidence to support any finding insofar as permanent damages are concerned" so that the jury could only resort to conjecture. The court also referred to the damage awards considered in four recent decisions of this court and indicat-

ed that the $10,000 award to Mr. Felkl was excessive in the light of the court's conclusion just quoted. The court declined to set a figure which the plaintiff might accept in lieu of a new trial because the evidence left the matter to conjecture.

Plaintiff had consulted two doctors with reference to difficulties experienced with his back and neck after the accident. He saw Dr. Nothum the third day after the accident, and for about a week thereafter. Dr. Nothum prescribed treatment. After experiencing further difficulty, plaintiff went back to Dr. Nothum in January, 1963. In February, Dr. Nothum referred him to Dr. Salinsky, a specialist in orthopedics, for diagnosis. Dr. Salinsky examined him, took X rays, and made a report to Dr. Nothum. Dr. Nothum sent him to Dr. Salinsky again in April, 1963. Treatment was prescribed directly by Dr. Nothum, who saw plaintiff frequently.

The court permitted Dr. Salinsky to testify concerning the history given by plaintiff and plaintiff's subjective complaints, and to state opinions as to diagnosis, causation, and permanency, based on the history and complaints as well as the doctor's observations and interpretation of X rays. Dr. Nothum did not testify, although it appears that plaintiff originally planned to call him. The court, after verdict, concluded that Dr. Salinsky's testimony was legally insufficient unless corroborated by testimony of Dr. Nothum.

Defendant had objected to Dr. Salinsky's testimony as to subjective matters because he was an "examining doctor, not in the nature of a treating doctor." The testimony, however, indicated that Dr. Nothum sent plaintiff to Dr. Salinsky, a specialist, for examination and diagnosis which would aid Dr. Nothum in treating plaintiff. Defendant made no effort to show that plaintiff went to Dr. Salinsky for the purpose of enabling Dr. Salinsky to testify in this action.

We therefore conclude that Dr. Salinsky's testimony was properly admitted and had probative force under our prior decisions, discussed in *Ritter v. Coca-Cola Co.*[2] The county judge did not, of course, have the *Ritter* decision before him at the time the new trial was ordered, but that decision states the principle "that if the trial court determines that a consultation is made by a claimant with a physician for the *bona fide* purpose of treatment [here, of obtaining a specialist's diagnosis to aid in treatment], the fact that the claimant also desires to utilize the physician as a witness on the trial in relation to his injury will not preclude the physician from testifying as to the patient's report of his subjective symptoms or from predicating medical conclusions upon such reports."[3]

We conclude that the order for a new trial was based upon an error of law. There is no general rule that a plaintiff must call all his treating physicians, and the memorandum suggests no reason to believe that injustice resulted in this particular case from the absence of Dr. Nothum.

The county court did not state that if weight were given to Dr. Salinsky's testimony the $10,000 award would, in his opinion, be excessive. We have, however, examined the record in order to determine whether the award can be sustained by the evidence. If we were satisfied that the award was excessive, we would exercise our discretionary power and grant a new trial on damages, giving plaintiff an option under *Powers v. Allstate Ins. Co.*[4] to accept a lower amount in lieu of the new trial.

The evidence, construed most favorably to plaintiff, may be summarized as follows:

Felkl's car was suddenly hit from behind, and the next thing he remembered was an officer asking for his driver's

[2] Ante, p. 157, 128 N. W. (2d) 439, decided June 2, 1964.

[3] *Ritter v. Coca-Cola Co., supra,* footnote 2, p. 164.

[4] (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.

license. He was taken to emergency hospital by ambulance and remained there about two hours. He had pain in his neck and lower back and his right eye was tearing.

Dr. McCormick, who treated the eye, testified that he found an abrasion to the cornea, which caused pain for two days but has fully healed.

Dr. Nothum gave him heat treatments for his neck and back, and permitted him to return to work after one week. He returned to Dr. Nothum after two months because his neck and back got worse, and the heat treatments were continued. He wears a corset and experiences more back pain when he tries to do without it. His neck improved, but still "snaps" when he turns it to the left side. His back bothers him every day.

Felkl is a molder. He must carry 75 to 90-pound cores 15 to 20 feet at waist height 60 to 75 times a day. He had done this work without difficulty for fifteen years before the accident. Now, at the end of a day's work, he can barely bend. He could take a lighter job, but would have to take a cut of 80 or 90 cents per hour in pay. He is thirty-six years of age. He testified he could not afford the cut, and forced himself to continue his present job.

He formerly carried on considerable gardening and similar activity at home, but he has had to reduce this by half.

Dr. Salinsky testified concerning his examinations of plaintiff, and interpreted the X rays he had taken. He pointed out several abnormalities in the curvature of the neck and lower back, and the width of spaces between certain vertebra, which led him to conclude that certain injuries had occurred to the ligaments. He stated his opinion that these injuries were caused by the accident; that Felkl sustained injury to the ligaments supporting the structure of the neck; that the ligaments now hold by scar tissue, which has less elasticity and resiliency and stimulates pain; that there is spasm in the left lumbosacral, and the lumbar

spine does not have its normal curvature because of muscle spasm; that because more than the average healing period has elapsed, the condition will be permanent, especially upon heavy lifting or frequent bending; that if he continues doing heavy work, he will have to continue to wear the corset and he will be annoyed by the stress to this region.

It is true that the expert called by defendant interpreted the X rays differently, held the opinion that Felkl does not have any permanent disability in either the neck or back, considered that the continued use of the corset was detrimental, and did not feel that Felkl's complaints were serious or disabling. The difference of opinion, however, presented a question for the jury to resolve.

Bearing in mind the plaintiff's age, the character of his work, the discomfort about which he testified, and the permanency of his difficulty according to Dr. Salinsky, we cannot say that the $10,000 award was beyond the range of reasonably debatable amounts.

*By the Court.*—Order reversed, cause remanded with directions to reinstate the verdict and enter judgment thereon.

WILKIE, J. (*concurring in part; dissenting in part*). I must respectfully disagree with that portion of the opinion of the majority that the jury verdict of $10,000 was not excessive. Even viewing all the evidence recited in the majority opinion in the light most favorable to the plaintiff,[1] including the disputed testimony of Dr. Salinsky as to the extent of permanent injury, it is my conclusion that an award of $10,000 to the plaintiff is beyond the range of reasonably debatable amounts and is excessive. I, too, would reverse but I would not reinstate the verdict but

---

[1] *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 92 N. W. (2d) 884.

would remand the cause to give the trial court an opportunity to give the plaintiff an option to either receive a new trial or to take such reduced amount as the trial court may determine to be reasonable under the rule in *Powers*.[2]

I am authorized to state that Mr. Chief Justice CURRIE joins in this opinion.

---

[2] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393. *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 117 N. W. (2d) 660.