JUST, on his own behalf and as personal representative and special administrator for the Estate of Antoinette F. Just, Respondent, v. MISERICORDIA HOSPITAL and another, Appellants: LOCHOWITZ, Defendant.

*No. 169. Argued November 26, 1973.—Decided January 4, 1974.*
(Also reported in 213 N. W. 2d 369.)

For appellant Misericordia Hospital there was a brief by *Law Office C. Donald Straub* of Milwaukee, and oral argument by *C. Donald Straub*.

For appellant Dr. Jerome A. Goodman there was a brief by *Arnold, Murray & O'Neill,* attorneys, and *Robert C. Watson* of counsel, all of Milwaukee, and oral argument by *Mr. Watson.*

For the respondent there was a brief by *Valenti, Flessas & Koconis,* all of Milwaukee, and oral argument by *John J. Valenti.*

CONNOR T. HANSEN, J.  Antoinette F. Just engaged the services of Dr. N. J. Lochowitz because of prolonged vaginal bleeding. Lochowitz suggested that she consult Goodman, 75 percent of whose practice is related to gynecology and obstetrics. On January 6, 1967, Mrs. Just conferred with Goodman and he examined her. Mrs. Just, the mother of seven children, was found to have an en-

larged uterus and cystocele. Goodman recommended that Mrs. Just have a vaginal hysterectomy and vaginoplasty, which is a repair of the cystocele. On February 2, 1967, Mrs. Just was admitted to Misericordia Hospital. On February 3, 1967, a vaginal hysterectomy was performed by Goodman, with Lochowitz assisting. It was determined during surgery that a rectocele repair was not required.

Mrs. Just complained of various pains but seemed generally to be making normal post-operative progress in the week that followed. However, on the afternoon of February 9th, the hospital notified Goodman that Mrs. Just's temperature was elevated. He was of the opinion that she may have been developing an infection and prescribed antibiotics. Dr. Unterholzner, a physician employed by the hospital in the event a patient requires emergency treatment, phoned Goodman at approximately 1:45 a. m. on February 10th. Unterholzner advised Goodman that Mrs. Just's temperature had elevated and that she was extremely ill. Goodman was also advised that Mrs. Just had experienced some purulent vaginal discharge. Goodman did not go to the hospital at that time but ordered antibiotics intravenously because they would take effect more rapidly. A culture was done on the drainage.

Goodman was again called at 4:40 a. m. and was informed that Mrs. Just was complaining of marked pain in the right shoulder and also penetrating to the front sternal area. Unterholzner had ordered an analgesic and oxygen.

Goodman came to the hospital some time after the nurse phoned him at 5 a. m. and told him that Mrs. Just was still complaining of chest pain. Goodman examined Mrs. Just, including a vaginal and rectal examination for the first time. A blood count had been taken on February 7th which indicated that Mrs. Just's white blood count was 13,900. (Normal is 500 to 1,000.) High white blood

count is an indication of infection. Her blood was not checked again until February 10th and at that time it was 24,900. Sometime on the morning of February 10th, Mrs. Just went into septic shock. Dr. Philip Guzzetta was called in for consultation and concluded that Mrs. Just was suffering from gram negative septicemia.

Septicemia is an extensive infection of bacteria and bacteria byproducts in the blood. Shock is the latter phase of the illness before death.

Late in the afternoon on February 10th, Mrs. Just expired. An autopsy was performed which determined the cause of death to be gram negative septicemia.

During the course of a fourteen-day trial, evidence was introduced in an attempt to prove the hospital and Goodman negligent in many respects. However, pertinent to this appeal is testimony first elicited on cross-examination of Dr. Andrew Pandazi, called as a witness for the plaintiff. He testified that her blood culture reflected the predominating organisms to be escherichia coli (E. coli) and enterococcus, both gram negative bacteria. Subsequent medical testimony indicated that her blood culture also contained an organism identified as diphtheroids which are also classified as gram negative bacteria.

Medical testimony was introduced to the effect that a patient whose blood was infected with one gram negative bacteria had some prospects of recovery if given adequate and timely care and treatment. However, one whose blood is infected with two gram negative bacteria suffered a 100 percent mortality rate.

At the post-trial hearing, the plaintiff presented affidavits and testimony of three microbacteriologists in support of the motion for a new trial. This evidence supported the proposition that enterococcus and diphtheroids are not gram negative bacteria as the testimony at the trial had indicated, but were in fact gram positive bacteria. Further, that there are no different schools of

thought in the medical profession with regard to the type of classification of these bacteria, and that the methods used are basic, standard, universal and unvaried throughout the medical world; that there is no possibility of confusing them so as to misclassify them; and that to do so indicates either total unfamiliarity with bacteria identification or a deliberate misstatement of fact.

This testimony would tend to prove that Mrs. Just was infected with one gram negative bacteria (E. coli) and thus had the possibility of recovery rather than that she was infected with two gram negative bacteria and the attendant zero-possibility of recovery, as testified to at trial.

It was on the basis of the foregoing evidence presented by the plaintiff in post-trial motions, that the trial court granted a new trial in the interest of justice as to the hospital and Goodman on both the issue of liability and the issue of damages.

### Issue.

The issue presented in this case is whether the trial court abused its discretion in granting the plaintiff a new trial in the interest of justice on the issues of liability and damages as to both the hospital and Goodman.

Sec. 270.49 (2), Stats., provides that ". . . No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein . . . ."

The order the trial court ultimately entered, which denied the motions of Goodman and the hospital for judgment on the verdict and granted the plaintiff a new trial in the interest of justice, was predicated upon the following findings:

"WHEREAS during the trial of the above-captioned matter three doctors (including Dr. Andrew Pandazi for

the plaintiff and Dr. Addis Costello and Dr. Jerome Goodman for the defendants) testified that Mrs. Antoinette F. Just died of septicemia as a result of two gram negative organisms in her blood stream, and

"WHEREAS Dr. Addis Costello and Dr. Jerome Goodman testified further at trial that the presence of two gram negative organisms results in 100% fatality of the persons so afflicted, and

"WHEREAS after trial the plaintiff submitted affidavits of three qualified microbiologists (Dr. Edward Balish of the University of Wisconsin Medical School, Dr. Edward A. Birge of the University of Wisconsin-Milwaukee and Marquette University, and Dr. Aleck Bernstein of the Wisconsin Medical College) that Mrs. Antoinette F. Just did not have two gram negative organisms in her blood stream, and

"WHEREAS one of the microbiologists, Dr. Aleck Bernstein was present to give testimony to the Court in support of his Affidavit on the 24th day of January, 1972, that Mrs. Antoinette F. Just did not have two gram negative organisms in her blood stream, and

"WHEREAS it appears from the evidence addressed at trial that a person who is afflicted with only one gram negative organisms has a chance to recover if appropriate and timely treatment is instituted by attending physicians, and

"WHEREAS it appears to the satisfaction of the Court that the evidence of Dr. Andrew Pandazi, Dr. Addis Costello and Dr. Jerome Goodman was false, and

"WHEREAS in the opinion of the Court such false testimony misled the jury at the trial of the cause, and

"WHEREAS the plaintiff is entitled to a jury verdict based upon medically accurate expert evidence, and

"WHEREAS the Court is of the opinion that a jury not so misled as to the presence of two gram negative organisms in the blood stream of Mrs. Antoinette F. Just and the alleged certainty of death therefrom, might have made different findings in the cause, and

"WHEREAS the Court finds that every medical witness, and medical expert that testified concerning the qualifications of the defendant, Dr. N. J. Lochowitz testified that what he had done was proper."

Many times this court has stated that when a trial court orders a new trial in the interest of justice, this court will affirm unless there is a clear showing of abuse of discretion. *Bartell v. Luedtke* (1971), 52 Wis. 2d 372, 377, 190 N. W. 2d 145; *Van Gheem v. Chicago & N. W. Ry. Co.* (1967), 33 Wis. 2d 231, 236, 147 N. W. 2d 237; *Quick v. American Legion 1960 Convention Corp.* (1967), 36 Wis. 2d 130, 135, 152 N. W. 2d 919. On review, this court does not look for evidence to sustain the jury findings. We look for reasons to sustain the trial court rather than make an independent review of the entire record as we do in the case of legal error. *Hillstead v. Shaw* (1967), 34 Wis. 2d 643, 648, 150 N. W. 2d 313; *Loomans v. Milwaukee Mut. Ins. Co.* (1968), 38 Wis. 2d 656, 662, 158 N. W. 2d 318.

Therefore, in reviewing the order, we examine the reasons stated, in light of the record, in order to determine whether the order constitutes an abuse of discretion.

The reasons stated in the order in the instant case make no reference as to how the presence of one gram negative organisms rather than the presence of two gram negative organisms could have in any way gone to the question of negligence as to the hospital. The jury found the hospital not negligent. Our examination of the record reflects that it is barren of any evidence of negligence on the part of the hospital, regardless of whether there was one or two gram negative bacteria organisms in the blood of the deceased. It is undisputed that Misericordia Hospital was an accredited hospital and followed the basic principles set forth by the Joint Commission on Accreditation. It is also undisputed that the hospital provided the facilities, nursing care, and services customarily provided by hospitals in the Milwaukee area at the time Mrs. Just was a patient therein. The record in this case reflects that the great weight of the credible evidence supports the findings of the jury which were that the

hospital was not negligent. Insofar as the hospital is concerned, the plaintiff has had his day in court and has failed to produce any evidence which would indicate the hospital was negligent.

We conclude that the evidence in this case did not warrant the granting of a new trial in the interest of justice as to the hospital and that it was in abuse of discretion to do so.

As previously stated, the jury found Goodman negligent; that his negligence was the cause of the injuries sustained by Mrs. Just and that such negligence was not the cause of her death. The special verdict of the jury found damages for pain and suffering in the amount of $2,000; $25,000 for pecuniary loss; $2,500 for loss of society and companionship, and $1,757.25 funeral expenses.

When granting a new trial, the trial court made no comment on the award of damages and defendant, Goodman, argues that if a new trial is to be granted in the interest of justice, it should be limited to the issue of liability. Furthermore, in the instant case the trial court was asked to limit the new trial to the issue of damages and refused to do so without setting forth any specific reasons for such a determination. Also, the plaintiff advances no reason which would indicate that the jury's determination of damages was inadequate or otherwise improper, and from our review of the record it cannot be said that the damages which were awarded were inadequate.

In *Kenwood Equipment, Inc. v. Aetna Ins. Co.* (1970), 48 Wis. 2d 472, 485, 486, 180 N. W. 2d 750, 182 N. W. 2d 241, it was stated:

"The scope of a new trial is discretionary with a trial court, and the question on appeal is whether the trial court abused its discretion.

" 'A party may not demand as a right that a new trial be restricted to one or more issues, and generally the

limiting of a new trial to part of the issues lies within the sound discretion of the trial court, in determining when the ends of justice will be better served by such limitation; whether, in the particular circumstances, the court has abused its discretion invariably presents an important question.

" ' . . . .

" 'The court will generally grant a partial new trial when the error, or reason for the new trial, is confined to one issue which is entirely separable from the others and it is perfectly clear that there is no danger of complication, or where the error in a trial relates only to a certain issue which is in no way dependent for its proper trial on other issues and as to such other issues there was no error. . . .' "

There is no question that the jury was misled in this case as to the question of what caused the death of Mrs. Just. However, the testimony which misled the jury with regard to that issue cannot be said to have influenced the jury's determination of damages. The issue of causation is separable from the issue of damages and we see no danger of complication, confusion, or prejudice, if the new trial is limited to the issue of liability.

This court has recognized that the trial court is generally in a better position to ascertain whether it would be unjust to require a party to relitigate the question of damages. *Leonard v. Employers Mut. Liability Ins. Co.* (1953), 265 Wis. 464, 470, 62 N. W. 2d 10; *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 62 N. W. 2d 549; 63 N. W. 2d 740. *See also: Baier v. Farmers Mut. Automobile Ins. Co.* (1959), 8 Wis. 2d 506, 511, 99 N. W. 2d 709. Whether the new trial should be limited to the issue of liability is a question which is subject to the discretion of the trial court. *Wintersberger v. Pioneer Iron & Metal Co.* (1959), 6 Wis. 2d 69, 76, 94 N. W. 2d 136; *Kenwood Equipment, Inc. v. Aetna Ins. Co., supra; Baier v. Farmers Mut. Automobile Ins. Co., supra.*

In view of the fact that the "false" testimony, which was the only reason for granting a new trial in the interest of justice, was related solely to the issue of causation, the trial court abused its discretion when it refused to exclude the issue of damages from the new trial and gave no acceptable reason for such refusal.

We, therefore, deem it appropriate to conclude that the order granting a new trial should be modified; that judgment should be entered for Misericordia Hospital on the verdict; and that a new trial in the interest of justice be ordered as to the defendant, Jerome A. Goodman, M.D., on the issue of liability. The cause is remanded for further proceedings consistent with this opinion.

*By the Court.*—Order modified, and cause remanded for proceedings consistent with this opinion; no costs allowed on this appeal.