STATE of Wisconsin, Plaintiff-Appellant-Petitioner,†

v.

Daniel GIWOSKY, Defendant-Respondent.

Supreme Court

*No. 81–1307–CR. Argued November 4, 1982.—*
*Decided November 30, 1982.*

(Also reported in 326 N.W.2d 232.)

† Motion for reconsideration denied, without costs, on January 11, 1983. STEINMETZ, J., took no part.

For the plaintiff-petitioner the cause was argued by *Terry Magowan*, assistant district attorney for Milwaukee county, with whom on the briefs was *E. Michael McCann*, district attorney, and *Marquerite M. Moeller*, assistant attorney general.

For the defendant-respondent there was a brief by *Waring R. Fincke, Stephen M. Glynn* and *Shellow, Shellow & Glynn, S.C.*, Milwaukee, and oral argument by *Mr. Fincke.*

BEILFUSS, C.J.   This is a review of an unpublished decision of the court of appeals which affirmed the trial court's order, Judge Ralph Adam Fine, presiding. The order granted the defendant's motion for a new trial on the grounds that he was denied his right to a unanimous verdict because the criminal complaint was duplicitous.

On June 16, 1980, the defendant, Daniel Giwosky, was charged with one count of battery in violation of sec.

940.19(1), Stats. 1979–80.[1] The facts surrounding this charge, which are in substantial dispute, are as follows:

On June 6, 1980, the victim, John Noldin, and his friend, Dan Minesal, were carp fishing with bows and arrows in the Milwaukee River in River Hills, Wisconsin. The defendant drove by and saw the two men on his land. He stopped his car and told Noldin and Minesal that they were trespassing on his land and should leave immediately. Minesal left and started walking down the road. Noldin, who had been standing on the river bank, entered the river and began to walk upstream. The defendant then left his car and walked over to the river bank near Noldin and again told him to leave. An argument ensued between the two men. Noldin refused to leave and continued to walk upstream with his back to the defendant.

The facts are in dispute as to what happened after this point. Noldin testified that as he was walking away he saw something from the corner of his eye. He turned toward the defendant and was struck in the mouth by a "log" thrown by the defendant. The defendant testified that he threw a "piece of wood" in an underhand fashion near Noldin in order to discourage him from fishing. He testified that the wood did not strike Noldin nor did he throw it with the intent to strike Noldin.

Noldin then climbed out of the river. He ran up to the defendant and said, "Are you crazy, throwing a log," or words to that effect. The parties' testimony was again substantially different as to what ensued next. Noldin testified that the defendant then punched him in the nose and mouth area, causing him to fall to the ground. He got up from the ground, ran toward the defendant and

---

[1] Sec. 940.19(1), Stats., provides:

"940.19 **Battery; aggravated battery.** (1) Whoever causes bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class A misdemeanor."

struck him in the shoulder and chest. The defendant then struck Noldin again in the face, causing Noldin to fall halfway to the ground. A further struggle ensued and again Noldin was knocked to the ground by the defendant. As Noldin attempted to get up, the defendant struck him in the face with his knee and kicked him at least twice in the back while he was on the ground.

Dan Minesal's testimony corroborated Noldin's description of the later stages of the assault. He testified that as he was walking away he heard arguing. He ran back to where the defendant's car was parked. He saw the defendant striking Noldin in the face with his fist. He saw Noldin fall to his knees and the defendant striking Noldin in the face with his knee. He also saw the defendant kicking Noldin in the back at least twice.

The defendant presented a substantially different version of the events on the river bank. He testified that when Noldin scrambled out of the river they began arguing and Noldin struck the first blow. They struggled and the defendant saw Minesal approaching. He testified that he became frightened that Minesal was going to get involved and so he punched Noldin in order to incapacitate him. Noldin fell to the ground and the defendant admits to striking Noldin in the face with his knee, but claims he did this because Noldin grabbed his legs. He denied kicking Noldin in the back.[2]

Noldin testified that as a result of the incident he suffered a broken upper tooth plus multiple bruises to the nose and mouth area and to his back. He originally testified that the log broke the tooth, but on cross-examination testified that he wasn't sure when his tooth broke. He did testify that his mouth was bloody as he scrambled

---

[2] The testimony was also very disputed as to the events that occurred following the struggle on the river bank. However, this evidence is irrelevant to the issues raised in this case, which deal solely with the events at the river bank.

out of the water. The defendant testified that the tooth broke when he struck Noldin on the river bank.

A three-day trial, which included a jury view of the scene, was conducted by Judge Ralph Adam Fine. The court instructed the jury on the State's burden of proof as to the four elements of battery as follows:

"Before the Defendant may be found guilty of battery, the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following four elements of the offense. First, that John Noldin suffered bodily harm. Second, that the Defendant committed an act which caused bodily harm to John Noldin. Third, that the Defendant intended to cause such bodily harm to John Noldin. Fourth, that such act was done without the consent of John Noldin."

The court then went on to describe in greater detail each element of battery. The court concluded the instruction on the elements of the battery, stating:

"If you are satisfied beyond a reasonable doubt by the evidence in the case, that the Defendant did commit an act which caused bodily harm to John Noldin that any time before doing such act the Defendant had formed in his mind the purpose to cause bodily harm to John Noldin and that the act of the Defendant was done in pursuance of such mental purpose then you should find the Defendant guilty of battery as charged in the complaint. If, however, you are not so satisfied then you must find the defendant not guilty."

The court instructed the jury on self-defense. It also gave the following unanimity instruction:

"Now let me emphasize again, ladies and gentlemen, that this is a criminal case and before a verdict can be legally received it must be reached unanimously. All twelve jurors must agree."

The jury returned a verdict finding the defendant guilty. The defendant was sentenced to seven months

Huber and a $5,000 fine. The defendant filed a motion for a new trial claiming, among other things, that the defendant's right to unanimous verdict was violated. The trial court granted the defendant's motion, finding that the complaint was "clearly duplicitous" in that it joined in a single count two separate offenses. The court reasoned that the log throwing incident was "clearly separate" from the incident at the river bank. The court of appeals affirmed, also finding the complaint to be duplicitous and stating that "the log striking incident and the physical fight between the two men were two factually distinct incidents." It held that two separate counts of battery were necessary to protect the defendant's right to a unanimous verdict.

The issue on review is whether the defendant's right to a unanimous verdict was violated because the trial court did not instruct the jury that it had to be unanimous as to whether the defendant committed battery when he threw the piece of wood or whether he committed battery during the altercation on the river bank. Because we believe that the defendant's behavior constituted one continuous course of conduct and that no issue of self-defense was sufficiently raised by the evidence, we hold that his right to a unanimous verdict was not violated by the instructions given. We conclude that under the facts of this case unanimity requires that the entire jury agree that the defendant intentionally committed *an act* which caused bodily harm. No agreement is required as to *which act* constituted battery because it was a continuous act.[3]

---

[3] The State argues that the defendant's failure to object to the unanimity instruction given, constitutes waiver of any claim of error. Although objections which are waived are not reviewable as a matter of right, this court may consider the merits of the objection if it chooses. *Manson v. State*, 101 Wis. 2d 413 n. .2, 304 N.W.2d 729 (1981); *State v. Wedgeworth*, 100 Wis. 2d 514, 528,

The defendant contends that the standard of review in this case is that the trial court's decision to grant a new trial will not be disturbed in the absence of a clear showing of an abuse of discretion. While this is clearly the general rule, *Larry v. Commercial Union Ins. Co.*, 88 Wis. 2d 728, 733, 277 N.W.2d 821 (1979), it is inapplicable to this case. The trial court ordered a new trial on the grounds that the criminal complaint was duplicitous. The court of appeals, relying on the abuse of discretion standard of review, affirmed on the same basis. However, both parties agree that the complaint which charged the defendant with a single count of battery was correct. If this is so, a complaint charging the defendant with two counts, as envisioned by both lower courts, would be multiplicious.[4] Therefore because the decisions of the lower courts were based on an error of law, this court is not bound to deference to those decisions. This court's review is *de novo* and the court must make an independent review of the entire record. *Just v. Misericordia Hospital*, 61 Wis. 2d 574, 581, 213 N.W.2d 369 (1974); *Felkl v. Classified Risk Ins. Corp.*, 24 Wis. 2d 595, 597, 129 N.W.2d 222 (1964).

The right to a jury trial is guaranteed by secs. 5 and 7 of the Wisconsin Constitution. This constitutional right to a jury trial has long been construed by this court to include the right to a unanimous verdict. *Boldt v. State,* 72 Wis. 7, 14–16, 38 N.W. 177 (1888); *Vogel v. State,*

302 N.W.2d 810 (1981). As we stated in *Manson*, 101 Wis. 2d at 418 n. 2: "We conclude that this record raises the issue of the defendant's right to a unanimous verdict and we conclude this issue warrants the court's consideration." We therefore do not reach the issue whether the right to a unanimous verdict can be waived.

[4] For a discussion of duplicity and multiplicity, *see State v. Rabe*, 96 Wis. 2d 48, 291 N.W.2d 809 (1980); *State v. George*, 69 Wis. 2d 92, 230 N.W.2d 253 (1975).

138 Wis. 315, 332-33, 119 N.W. 190 (1909) ; *Holland v. State,* 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979). Linked to this unanimity requirement is the requirement that the prosecution must prove each essential element of the offense beyond a reasonable doubt. *Holland,* 91 Wis. 2d at 138. "Recognizing the unanimity requirement and the reasonable-doubt standard, it is clear that the jury must agree unanimously that the prosecution has proved each essential element of the offense beyond a reasonable doubt before a valid verdict of guilty can be returned." *Id.*

"Although a . . . defendant's right to a unanimous verdict is clear, the scope of that right, unfortunately, is not." *United States v. Gipson,* 553 F.2d 453, 456 (5th Cir. 1977). This court has dealt with the difficult application of the unanimity principle in several recent cases. In *Holland v. State,* 91 Wis. 2d 134, 280 N.W.2d 288 (1979), we addressed the issue of the application of the unanimity requirement in the context of the party to a crime statute. In *Holland* we held that the unanimity principle was not violated when the court instructs the jury in the disjunctive, as to the various ways a person may be guilty as a party to a crime,[5] without requiring a jury to agree on which means was used in the case. The court held that the unanimity principle requires that the jury agree that the defendant participated in the crime, not how the defendant participated. The court reasoned:

"Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime

---

[5] Under the party to a crime statute a person may be concerned with the commission of a crime in three alternate ways: direct commission, aiding and abetting its commission, and conspiring with another to commit the crime. Sec. 939.05, Stats.

can be committed. The cases across the country—New York, Michigan, Washington—recognize and note that it is sufficient that all jurors unanimously agree on their ultimate conclusion that the defendant was guilty of the crime charged, though they may not agree on the manner in which the defendant participated in the crime if under any of the alternative ways the defendant would be guilty of the crime charged. To permit any other conclusion would be to permit the guilty defendant to escape accountability under the law because jurors could not unanimously choose beyond a reasonable doubt which of several alternate ways the defendant actually participated, even though all agree that he was, in fact, a participant." 91 Wis. 2d at 143.

The decision in *Holland* relied on and adopted the rationale of the decision of the Fifth Circuit in *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977). In *Gipson* the defendant was convicted of violating 18 U.S.C., sec. 2313, which imposes criminal liability on one who "receives, conceals, stores, barters, sells or disposes" of a stolen vehicle in interstate commerce. The trial court had expressly instructed the jury that it could find the defendant guilty without agreeing on which of the six prohibited acts the defendant committed. The Fifth Circuit reversed the conviction, finding that the six prohibited acts were divisible into "two distinct conceptual groupings."[6] As long as the jury agreed that the defendant committed an act within one of the two groupings, the unanimity requirement was met, despite disagreement as to which of the intragroup acts the defendant committed. The court in *Holland* analyzed the reasoning in *Gipson* as follows: "[t]he *Gipson* logic requires the jury to agree on the factual theory or 'concept' underlying criminal liability but does not require it to split hairs over nomenclature." *Holland,* 91 Wis. 2d at 139.

---

[6] The two groupings created by the court were the first consisting of receiving, concealing and storing and the second comprised of bartering, selling and disposing. 553 F.2d at 458.

This court in two recent companion cases applied the *Holland* and *Gipson* rationale to claims that the right to a unanimous verdict was violated by the use of the disjunctive jury instruction in sexual assault and armed robbery cases involving the use or threat of force. *Manson v. State*, 101 Wis. 2d 413, 304 N.W.2d 729 (1981); *State v. Baldwin*, 101 Wis. 2d 441, 304 N.W.2d 742 (1981). The defendant argued that under *Gipson* the use of force and threat of force were conceptually distinct and thus the jury must unanimously agree as to whether force was actually used or threatened. The court rejected this argument, holding that the use of force and the threat of force under the armed robbery and sexual assault statutes " 'are of sufficient conceptual similarity to comprise a single element of the offense.' " *Manson,* 101 Wis. 2d at 430. *See also, Baldwin,* 101 Wis. 2d 450–52. The court in *Manson* concluded:

"The court concludes that requiring the jurors to decide whether the taking was accomplished by 'using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property,' sec. 943.32(1)(a), Stats. 1979–80, or 'by threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property,' sec. 943.32(1)(a), would raise characterization problems which the courts in *Gipson* and in *Holland* correctly noted should be avoided. The jury should not be instructed to draw a line finer than that which the human conduct sought to be defined will realistically permit. The jury should not be obliged to decide between two statutorily prohibited ways of committing the crime if the two ways are practically indistinguishable. An instruction requiring unanimity of the mode of committing the single crime of robbery was not required." 101 Wis. 2d at 430.

The application of these decisions to the instant case leads to the conclusion that the defendant's right to a unanimous verdict was not violated. The trial court instructed the jury that in order to find the defendant guilty of battery it must unanimously agree, beyond a reasonable doubt, that the defendant intentionally committed "an act which caused bodily harm to John Noldin." The defendant contends that this instruction violated the unanimity requirement because it allowed the jury to convict the defendant without all the jurors agreeing as to whether a battery occurred when the defendant threw the log or during the physical fight on the river bank. This contention is based on the assumption that the defendant's behavior constituted two separate incidents because the defendant presented different defenses to the "two incidents." As to the first "incident," defendant denied that the log hit Noldin and, as to the second, the defendant claimed he struck Noldin on the river bank in self-defense.

A review of the entire record refutes the contention that the confrontation between the defendant and Noldin constituted two separate incidents. The evidence introduced at trial establishes that the encounter was a short continuous incident that can not be factually separated. The testimony of the defendant, the victim and Dan Minesal indicates that the entire episode lasted no longer than two minutes. The defendant became angry when Noldin refused to leave the area and this emotion did not subside throughout. The encounter began when the defendant threw the log at Noldin and spontaneously and immediately continued on the river bank. Once the defendant began the altercation by throwing the wood into the water there was no "break in the action" and the confrontation continued until the defendant had incapacitated Noldin on the river bank. After all, every blow

that is struck in an altercation such as this is not a separate incident. The jury could properly consider it as one continuous event.

The record also demonstrates that factually and legally defendant was not entitled to the self-defense instruction.[7] The defendant was the party who provoked the entire incident. When the defendant originally approached Noldin and told him to leave, Noldin went into the river and began to walk away from the defendant. The defendant then provoked the encounter by throwing the piece of wood at Noldin. Noldin immediately scrambled out of the river and the physical fight ensued with no retreat on the part of the defendant. The entire episode was based on the spontaneous conduct of the defendant in provoking and striking Noldin. Under these circumstances the defendant can not claim the benefit of self-defense in order to attempt to break this single con-

---

[7] *See* sec. 939.48(2), Stats., which provides:

"(2) Provocation affects the privilege of self-defense as follows:

"(a) A person who engages in unlawful conduct of a type likely to provoke others to attack him and thereby does provoke an attack is not entitled to claim the privilege of self-defense against such attack, except when the attack which ensues is of a type causing him to reasonably believe that he is in imminent danger of death or great bodily harm. In such a case, he is privileged to act in self-defense, but he is not privileged to resort to the use of force intended or likely to cause death to his assailant unless he reasonably believes he has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm at the hands of his assailant.

"(b) The privilege lost by provocation may be regained if the actor in good faith withdraws from the fight and gives adequate notice thereof to his assailant.

"(c) A person who provokes an attack, whether by lawful or unlawful conduct, with intent to use such an attack as an excuse to cause death or great bodily harm to his assailant is not entitled to claim the privilege of self-defense."

tinuing incident into distinct conceptual incidents in order to come under the doctrine of *Gipson*.

Rather, under the decisions of this court as outlined above, the unanimity requirement was satisfied by the instruction that the jurors must agree that the defendant intentionally committed an act which caused bodily harm to the defendant. The defendant's actions during the brief encounter are not practically or legally separable or distinct.

Under *Holland* and *Gipson* the jury had to agree on the factual theory underlying the offense charged, *i.e.*, that the defendant intentionally committed an act which caused the victim bodily harm sometime during the incident. There is no conceptual distinction between the throwing of the log and the punches and kicks on the river bank. They are all alternate means used by the defendant to injure Noldin. As long as the jury agreed that the defendant intentionally committed an act which caused physical harm to Noldin, unanimity is achieved. To impose the further requirement that the jury must also agree as to whether the victim was struck with the piece of wood or was injured during the altercation on the river bank is to require the jury "to draw a line finer than that which the human conduct sought to be defined will realistically permit." *Manson*, 101 Wis. 2d at 430. Therefore, we find that the instructions given by the trial court which required the jury to unanimously agree beyond a reasonable doubt that all four elements of battery were present, were sufficient to protect the defendant's right to a unanimous verdict.

We conclude that the defendant was not entitled to a new trial upon the ground the complaint was duplicitous and that there was no assurance of a unanimous verdict.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court

for further proceedings not inconsistent with this opinion.

STEINMETZ, J., took no part.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The majority holds that the defendant was not denied his constitutional right to a unanimous verdict and therefore is not entitled to a new trial. In order to reach its holding, the majority first had to conclude that the confrontation between the defendant and Noldin was "a short continuous incident that can not be factually separated" *(supra,* p. 456) rather than two incidents, the log-throwing incident and the ensuing fistfight. In order to reach this conclusion, the majority had to reach the conclusion that on the basis of this record the defendant had no right to a self-defense instruction regarding the fistfight.

Were it not for the existence of the self-defense instruction and self-defense theory, I would agree with the majority that this defendant was not denied his right to a unanimous verdict. I dissent because I cannot agree with the majority that the self-defense instruction constituted error.

The record shows that the defendant introduced evidence at trial to prove his theory of self-defense as to the fistfight, but not as to the log-throwing incident. Accordingly, the trial court gave a self-defense instruction to which the state never objected—not at trial, not during post-trial motions, not on appeal to the court of appeals and not in its briefs to this court. The majority, though, has raised and decided the issue of self-defense instruction *sua sponte* in order to reach its desired result.

This court has held that in determining whether a self-defense instruction should be given, "neither the trial court nor this court may, under the law, look to the

'totality' of the evidence." *State v. Mendoza,* 80 Wis. 2d 122, 152, 258 N.W.2d 260 (1977). To do so "would require the court to weigh the evidence—accepting one version of facts, rejecting another—and thus invade the province of the jury." *Id.* Balancing the evidence and deciding the facts, however, are exactly what the majority does here. The proper standard to use to determine whether a self-defense instruction is proper is "not what the 'totality of the evidence' reveals but rather, whether a reasonable construction of the evidence will support the defendant's theory 'viewed in the most favorable light it will "reasonably admit of from the standpoint of the accused." ' *Ross v. State* [61 Wis. 2d 160, 211 N.W.2d 827 (1973)]. If this question is answered affirmatively, then it is for the jury, not for the trial court or this court, to determine whether to believe defendant's version of events." *State v. Mendoza, supra,* 80 Wis. 2d at 153.

The majority holds that the instruction was erroneous by implicitly rejecting the defendant's testimony that he did not provoke the incident, that he did not throw the log at Noldin and that he did not become angry until Noldin scrambled out of the river, pointing his bow and arrow at the defendant. The majority states that "[t]he defendant was the party which provoked the entire incident. . . . The defendant then provoked the encounter by throwing the piece of wood at Noldin. Noldin immediately scrambled out of the river and the physical fight ensued with no retreat on the part of the defendant. The entire episode was based on the spontaneous conduct of the defendant in provoking and striking Noldin." (*Supra,* p. 457)

My reading of the record convinces me that there are facts which, if the jury believed, would support the defendant's theory of self-defense. Therefore, I cannot agree with the majority's holding that the self-defense

instruction was error and that consequently there was no unanimity problem present in this case. Since the self-defense instruction was properly given, this court should uphold the trial court's grant of a new trial because the two offenses, the log-throwing and the fist-fight, are conceptually distinct in this case. *Manson v. State*, 101 Wis. 2d 413, 304 N.W.2d 729 (1981). I would affirm the court of appeals decision.