STATE of Wisconsin, Plaintiff-Respondent,

v.

Domonic D'ACQUISTO, Defendant-Appellant-Petitioner.

Supreme Court

No. 84–339–CR. *Submitted on briefs April 3, 1985.—Decided June 28, 1985.*

(Also reported in 370 N.W.2d 781.)

For the defendant-appellant-petitioner there were briefs by *Stephen M. Glynn, Janice A. Rhodes* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee.

For the plaintiff-respondent there was a brief by *David J. Becker,* assistant attorney general, and *Bronson C. La Follette,* attorney general.

WILLIAM A. BABLITCH, J.  Domonic D'Acquisto (D'Acquisto) seeks review of a court of appeals' decision that denied his request for discretionary reversal of his conviction of being a party to the crime of aggravated battery as a result of an assault on the victim James Schoemperlen (Schoemperlen).  D'Acquisto argues, and we agree, that the court of appeals applied an erroneous standard in denying his request for discretionary reversal.  Nonetheless, we affirm the court of appeals' decision because we conclude that it reached the correct result in holding that the real controversy was fully tried.

Schoemperlen was driving home from a Milwaukee Brewers' baseball game when he realized that he was being followed by a police squad car that was signaling for him to pull over.  Schoemperlen attempted to elude the police for several miles but was eventually forced to stop.  Several squad cars converged on the scene.  Schoemperlen was pulled from his car and was allegedly severely beaten by several Milwaukee police officers for a period lasting several minutes.  Schoemperlen could not identify

any of the officers who struck him but testified that he was struck with a "square object," a "longer black object" and fists and that his face was struck on the pavement. Citizen eye witnesses and police witnesses testified as to which officers struck the blows.

D'Acquisto was one of three police officers who was charged as a party to the crime of aggravated battery of Schoemperlen, in violation of sec. 940.191m), Stats. and sec. 939.05. These sections are set forth below.[1] D'Acquisto was found guilty by a jury after a six day trial.

The criminal complaint and amended information alleged that D'Acquisto, as a party to a crime, did cause great bodily harm to Schoemperlen, with intent to cause

---

[1] "940.19  Battery; aggravated battery. . . .

"(1m)  Whoever causes great bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class E felony."

"939.05  Parties to crime.  (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2)  A person is concerned in the commission of the crime if he:

"(a)  Directly commits the crime; or

"(b)  Intentionally aids and abets the commission of it; or

"(c)  Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it.  Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime.  This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

bodily harm to him without his consent. Affidavits and statements were attached to the complaint alleging that Schoemperlen was struck with fists, a long black object, a radio and had his face smashed into the pavement. The conduct specifically enumerated in the affidavits attached to the complaint, testified to at the preliminary examination and principally used by the prosecution at trial in seeking D'Acquisto's conviction was that D'Acquisto hit Schoemperlen in the face with his Motorola walkie-talkie radio. However, one witness, Kenneth Kowalski, also testified at trial that D'Acquisto grabbed Schoemperlen's hair and hit his face into the pavement. At sentencing Judge Barron commented that some jurors had indicated to him after trial that they did not believe that D'Acquisto was the officer who hit Schoemperlen with the radio, but rather that they believed that he was the officer who grabbed Schoemperlen's hair and "bashed" his face on the pavement.[2]

D'Acquisto appealed to the court of appeals seeking discretionary reversal, pursuant to sec. 752.35, Stats., on the ground that the real controversy in issue had not been fully tried. D'Acquisto argued: "[t]he issue the jury thought to be in controversy—whether D'Acquisto smashed Schoemperlen's head into the pavement—was not fairly tried. If it had been, no reversal would be necessary, for an acquittal would have been the likely result."

---

[2] The State of Wisconsin (State) argues that the jurors' assertions that they based their findings of guilt on the defendant's hitting Schoemperlen's head into the pavement is incompetent evidence, barred from admission by sec. 906.06(2), Stats. This section provides that "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. . . ." Because we decide this case on other grounds we do not reach this issue.

The court of appeals declined to grant discretionary reversal. It held that the "test" for determining whether a miscarriage of justice had occurred such that a discretionary reversal is warranted "is whether there is a substantial probability that a different result would be produced" on retrial. After reviewing the record, the court of appeals concluded that it was "satisfied that this matter was fairly and fully tried and there was not a substantial probability of a different result."

D'Acquisto subsequently petitioned this court for review. The issues for review are:

(1) Did the court of appeals apply an erroneous standard in denying discretionary reversal on the ground that the real issue in controversy was not fully tried by holding that such a reversal requires a substantial probability of a different result on retrial?

(2) If so, was the real issue in controversy fully tried?

The appropriate standard of review for assessing the propriety of the court of appeals' denial of a party's request for a new trial under sec. 752.35, Stats., is that this court will uphold the court's discretion if its decision is made on appropriate facts and the correct law and thus is one which a court reasonably could have reached. *State v. McConnohie,* 113 Wis. 2d 362, 370, 334 N.W.2d 903 (1983). If it is demonstrated that the court of appeals made a discretionary order, pursuant to sec. 752.35, based upon a mistaken view of the law, we will ordinarily reverse that order. *Id.* at 371. We will not, however, reverse the court of appeals when it makes an error of law in exercising its discretion pursuant to sec. 752.35 if after an examination of the record, we conclude that the facts and the application of the proper law to them support the court of appeals' decision. *Cf. Haskins v. State,* 97 Wis. 2d 408, 414–15, 294 N.W.2d 25 (1980) ; *Hammen v. State,* 87 Wis. 2d 791, 800, 275 N.W.2d 709 (1979).

In the instant case, we conclude that the court of appeals erred as a matter of law when it held that a party seeking discretionary reversal on the ground that the real controversy has not been fully tried must demonstrate a probability of a different result on retrial. Nonetheless, we affirm the court of appeals because we conclude that the proper law, applied to the facts contained in the record, supports the court of appeals' decision that the real controversy, namely whether D'Acquisto was a party to a crime of aggravated battery, was fully tried.

As we stated in *State v. Wyss,* 124 Wis. 2d 681, 370 N.W.2d 745 (1985), decided on this date, sec. 752.35, Stats., provides the court of appeals with two separate bases upon which to grant discretionary reversal. *State v. Wyss,* page 735. This section provides:

**"Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."

Thus, a new trial may be ordered (1) whenever the real controversy has not been fully tried or (2) whenever it is probable that justice has for any reason miscarried. Separate criteria exists for determining each of these two distinct situations. *State v. Wyss,* page 735.

In *Wyss,* this court discussed when discretionary reversal is warranted under each of these grounds and explained the distinction between these standards. We stated:

"The court of appeals may exercise its power of discretionary reversal under the first part of sec. 752.35, Stats., without finding the probability of a different result on retrial when it concludes that the real controversy has not been fully tried. *See, e.g. State v. Cuyler,* 110 Wis. 2d 133, 142–43, 327 N.W.2d 662 (1983); *Garcia v. State,* 73 Wis. 2d 651, 245 N.W.2d 654 (1976); *Logan v. State,* 43 Wis. 2d 128, 137, 168 N.W.2d 171 (1969); *Lorenz v. Wolff,* 45 Wis. 2d 407, 173 N.W.2d 129 (1970). The case law reveals that situations in which the controversy may not have been fully tried have arisen in two factually distinct ways: (1) when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case, *e.g., Cuyler, Garcia* and *Logan;* and (2) when the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried. *E.g. Lorenz.*

"In either of these situations, the court is not confined to apply the mechanistic formula articulated in *Lock v. State,* 31 Wis. 2d 110, 142 N.W.2d 183 (1966), which required it to find a substantial probability of a different result on retrial. *Lorenz* at 414. As we have previously noted in such situations, 'it is apparent that we cannot say, using the mechanistic rule of *Savina* [which restated the *Lock* rule], that on a retrial the [petitioning party] plaintiff would probably win.' *Lorenz* at 415. Thus, the court must have the liberty in such situations to consider the totality of circumstances and determine whether a new trial is required to accomplish the ends of justice because the real controversy has not been fully tried. *Cuyler* at 142; *Lorenz* at 415.

"The grounds for ordering a new trial under the second part of sec. 752.35, Stats., when it is probable that justice has miscarried, have not changed since they first appeared in sec. 2405m, Stats. 1913 created by ch. 214, Laws of 1913. From the time of the statutes' inception until *Lock,* no bright line rule was articulated for determining when justice had miscarried in an individual case. However, prior to *Lock,* cases involving a reversal because of a miscarriage of justice had implicitly complied with the standard that the probability of a different result had to be established before a new trial would be ordered. *See Paladino v. State,* 187 Wis. 605, 606, 205

N.W. 320 (1925); *State v. Hintz*, 200 Wis. 636, 642, 229 N.W. 54 (1930). *Lock* unequivocally established the rule to be followed for determining when a miscarriage of justice, under the second part of sec. 752.35, Stats., has occurred. We stated: 'In order for this court to exercise its discretion and for such a probability to exist we would at least have to be convinced that *the defendant should not have been found guilty* and that justice demands the defendant be given another trial.' *Id.* at 118. (Emphasis added.)" *Id.* at 735–736.

In the instant case, D'Acquisto requested discretionary reversal under the first ground of sec. 752.35, Stats., namely, that the real controversy had not been fully tried; however, the court of appeals applied the standard for determining when discretionary reversal is warranted under the second ground. In so doing, the court of appeals applied an erroneous standard of law. Nonetheless, we affirm the court of appeals' decision because the record contains facts which support the court of appeals' decision when applied by the proper law.

Upon reviewing the record in this case, we conclude that the facts support the court of appeals' discretionary determination. The defendant argues that the real controversy was whether D'Acquisto smashed Schoemperlen's head into the pavement and that this controversy had not been fully tried. We do not agree that the defendant's definition of what constitutes the "real controversy" is correct. The real controversy in this case, as clearly stated in the amended information, was whether D'Acquisto was a party to the crime of the aggravated battery of Schoemperlen. We conclude that this issue was fully tried.

In arguing that the real issue in controversy was not fully tried, D'Acquisto asserts that had he "known ahead of time that this testimony [Kowalski's assertion that he hit Schoemperlen's head on the pavement] would be the

basis of the battery claim, he would have proceeded differently at trial, including seeking a special unanimity instruction requesting the juror to agree on the particular battery allegedly committed." Defendant's brief at 12. This argument has no merit.

We conclude that there was ample evidence in the record to suggest that D'Acquisto did know "ahead of time" that he might have to defend against such an allegation. D'Acquisto was charged as being a party to the crime of aggravated battery to Schoemperlen. Affidavits and statements were attached to the complaint alleging that Schoemperlen was struck with fists, a long black object, and a radio and had his face smashed into the pavement, all in the space of only several minutes involving a minimum of six officers. At least 13 officers were directly at the scene. The beating involved one continuous unlawful event. While the conduct specifically enumerated in the affidavits which were attached to the complaint alleged that D'Acquisto was the officer who hit Schoemperlen with his Motorola walkie-talkie radio, D'Acquisto was clearly aware that as a person charged in the complaint and the information with being "concerned in the commission of the crime" he could be convicted of any of the conduct involved in the beating, even if he did not directly commit it. *See* sec. 939.05, Stats. In addition, the State was free to demonstrate that D'Acquisto intentionally committed any act which caused great bodily harm to Schoemperlen during the course of the beating. The State was not limited to proving that D'Acquisto was the officer who struck Schoemperlen with the radio, the behavior enumerated in the affidavits.

From this we also reject any argument that a special unanimity instruction would have been warranted in this case if requested. *See State v. Lomagro,* 113 Wis. 2d 582, 594–598, 335 N.W.2d 583 (1983) ; *State v. Giwosky,* 109 Wis. 2d 446, 451, 326 N.W.2d 232 (1982). As we stated in *Giwosky,* "[w]e conclude that under the facts of

this case unanimity requires that the entire jury agree that the defendant intentionally committed *an act* which caused bodily harm. No agreement is required as to *which act* constituted battery because it was a continuous act." *Id.* The aggravated battery in this case can be characterized as one continuing criminal act. *Lomagro* at 598. Therefore, "[u]nder these circumstances, even though evidence of different acts was introduced at trial, the jury did not have to be unanimous as to which specific act the defendant committed in order to convict the defendant, since the acts were conceptually similar." *Id.* Hitting the victim's face with a radio during a beating is "conceptually similar" to hitting the victim's face into the pavement during the same beating. Thus, even had the defendant requested an unanimity instruction, one would not have been warranted in this case.

To reiterate, the State charged D'Acquisto as a party to the crime of the aggravated battery to Schoemperlen. The State was required to prove that during the course of the beating D'Acquisto participated in an act or acts which caused great bodily harm to Schoemperlen. The beating involved one continuous course of unlawful conduct. Accordingly, the acts of hitting Schoemperlen with a radio or with fists, kicking him, or smashing his face into the pavement constitute one continuous unlawful act. Therefore, whether D'Acquisto was a party to the crime of any act which constituted an aggravated battery to Schoemperlen is the real issue in controversy. This issue was the subject of a six day jury trial.

The record demonstrates that substantial testimony was presented as to whether D'Acquisto struck Schoemperlen with the Motorola walkie-talkie radio. Paul Mullens and Steven Schroeder, area residents, both testified extensively that they saw D'Acquisto strike Schoemperlen with a walkie-talkie radio. Other witnesses testified that D'Acquisto was involved in arresting Schoemperlen following the chase but did not deliver any of the blows

Schoemperlen received during the beating. D'Acquisto also testified that he handcuffed Schoemperlen but did not strike him in any fashion. There was extensive cross-examination of each of the witnesses as to whether D'Acquisto struck Schoemperlen with the walkie-talkie radio. This issue was also the subject at closing argument.

Kenneth Kowalski, a resident of the neighborhood in which the beating occurred, testified that D'Acquisto was the officer who hit the victim's face into the pavement. Kowalski had not identified D'Acquisto as this officer prior to the trial. Defense counsel engaged in extensive cross-examination, covering nine pages of transcript, questioning the veracity of this testimony. Defense counsel made repeated attempts to impeach this testimony with Kowalski's prior statements and to demonstrate that Kowalski had not identified D'Acquisto at prior proceedings as the officer who hit Schoemperlen's face into the ground.

In addition, we note that even prior to Kowalski's testimony, defense counsel made efforts to test the truth or falsity of the allegation that D'Acquisto was the officer who hit Schoemperlen's face into the pavement. Defense counsel asked D'Acquisto's partner, William Behling, the following question on cross-examination:

"Q. You didn't see him [D'Acquisto] grab Mr. Schoemperlen's hair and smash his face into the pavement.
"A. I did not."

D'Acquisto also addressed and refuted this allegation in his testimony. He stated that he did not smash Schoemperlen's face into the pavement.

In addition, the issue of whether D'Acquisto hit Schoemperlen's face into the pavement became the subject of closing argument. Initially the State framed the question confronting the jury as whether the defendant

"participated in the beating." The State relied on Kowalski's testimony to establish such participation, stating: "Mr. Kowalski says that he saw Domonic D'Acquisto strike Mr. Schoemperlen's face into the pavement. . . . But we also know from the testimony of Mullens, Schroeder, and *Kowalski* as corroborated by Mr. Pillow that some of the blunt force blows to Mr. Schoemperlen's facial bones were inflicted by Domonic D'Acquisto. . . ." In reply, defense counsel argued at length about the credibility of Kowalski and the veracity of his testimony.

Thus, we hold that the court of appeals' conclusion that the issue of whether D'Acquisto was guilty of being party to the crime of aggravated battery was fully tried before the jury and was supported by the record. Accordingly, we conclude that the court of appeals properly denied D'Acquisto's request for discretionary reversal on this basis. Having concluded that the court of appeals reached a result which was supported by the record, we affirm its decision.

*By the Court.*—The decision of the court of appeals is affirmed.