STATE of Wisconsin, Plaintiff-Respondent,

v.

Eugene HEITKEMPER, Sr., Defendant-Appellant.†

Court of Appeals

*No. 94–2659–CR. Submitted on briefs June 1, 1995.—Decided August 2, 1995.*

(Also reported in 538 N.W.2d 561.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Chandek* of *William J. Chandek & Associates* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sharon Ruhly*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J. Eugene Heitkemper, Sr. appeals from a judgment of conviction for child abuse and an order denying his motion for postconviction relief. Heitkemper challenges the jury's verdict on two grounds: (1) the verdict should be impeached because of prejudicial statements made by a juror during jury deliberations, and (2) he was denied the right to a unanimous verdict. We are unpersuaded by Heitkemper's arguments, and we affirm the judgment of conviction and the order denying postconviction relief.

Heitkemper was charged with intentionally causing bodily harm to his sixteen-year-old son, C.H., contrary to § 948.03(2)(b) and (5), STATS.[1] The charges arose out of a much disputed incident at the Heitkempers' home on the morning of March 9, 1993.

[1] Heitkemper was initially charged with intentionally causing harm to a child for whom he was responsible by conduct which created a high probability of great bodily harm contrary to § 948.03(2)(c) and (5), STATS. This charge was amended to the lesser charge on the first day of trial.

221

C.H. initially informed police that he was arguing with his brother, A.H., and his mother, Sandra, when Heitkemper struck him on the arms, legs and back with a two-by-four board, and then slapped him on the face with an open hand. Sandra also told police that Heitkemper struck C.H. with a two-by-four held in both hands.

At the preliminary hearing, both C.H. and Sandra told a different account of the incident. C.H. testified that Heitkemper hit him once or twice with a small, thin piece of trim board, not numerous times with a two-by-four, and that he could not remember if Heitkemper struck him with his hands. Sandra testified that Heitkemper slapped C.H. once in the face with an open hand, but did not use a board to hit him. Further, Sandra stated that she did not remember giving a statement to police that morning about the incident. The court found probable cause and bound Heitkemper over for trial.

At trial, C.H. and Sandra again told a different account of the incident. C.H. testified that on the morning in question, Heitkemper slapped him with an open hand, but did not hit him with a stick. C.H. testified that his injuries were sustained by falling on an automobile motor which he was fixing the night before the incident. He further testified that he lied about being struck with a board to get back at Heitkemper.

Sandra testified at trial, as she did at the preliminary hearing, that Heitkemper slapped C.H. once in the face with an open hand. However, she stated that she did not remember any of the events after the incident because she had a reaction from the combination of two medications she took in large doses, one which she identified as Lorazepam. Accordingly, she maintained that she did not recall making any statement to

the police that morning and denied ever stating that Heitkemper hit C.H. with anything other than his hand.

Heitkemper testified in his own defense at trial. He admitted that he slapped C.H. in the face for disciplinary reasons because C.H. was yelling, screaming and swearing at other family members. The jury found Heitkemper guilty as charged.

Heitkemper filed a motion for postconviction relief to impeach the jury's verdict due to statements made by a juror during deliberations. The juror, Richard Sams, was a licensed pharmacist. According to Sams's affidavit, he told jurors that in his professional opinion Sandra was untruthful about the drug she took because the quantities she testified she took would have knocked her out. Sams also stated that he believed that his "professional opinions did sway members of the jury in their decision." The trial court denied Heitkemper's postconviction motion.

On appeal, Heitkemper renews his postconviction argument regarding impeachment of the jury verdict. In addition, Heitkemper contends that he was denied his right to a unanimous verdict. We will address each argument in turn and discuss further relevant facts as necessary.

## JURY IMPEACHMENT

■

When a defendant attempts to impeach a jury verdict on the grounds that jurors came into possession of prejudicial extraneous information, we must determine whether the evidence offered in support is (1) competent, (2) shows substantive grounds sufficient to overturn the verdict and (3) shows resulting prejudice. *State v. Williquette*, 190 Wis. 2d 678, 697, 526 N.W.2d

144, 151-52 (1995); *After Hour Welding v. Laneil Management Co.*, 108 Wis. 2d 734, 738, 324 N.W.2d 686, 689 (1982). If the proffered juror testimony is not competent, we need not inquire further. *State v. Casey*, 166 Wis. 2d 341, 346, 479 N.W.2d 251, 253 (Ct. App. 1991).

RULE 906.06(2), STATS., controls the competency prong of the impeachment analysis and establishes a general prohibition against the use of juror testimony to impeach a verdict. *State v. Messelt*, 185 Wis. 2d 254, 274, 518 N.W.2d 232, 240 (1994). However, RULE 906.06(2) provides two limited exceptions which allow jurors to testify whether "extraneous prejudicial information was improperly brought to the jury's attention" or whether "any outside influence was improperly brought to bear upon any juror."[2] *Id.*

Heitkemper argues that Sams's statements during deliberations concerning the effect of the drugs Sandra testified she took constituted extraneous prejudicial information which was improperly brought to the jury's attention. In order to demonstrate that Sams's testimony is competent under this first exception,

---

[2] RULE 906.06(2), STATS., provides:

INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

Heitkemper bears the burden of proving that Sams's testimony concerns extraneous information, that this information was improperly brought to the jury's attention, and that the extraneous information was potentially prejudicial. *Id.* at 275, 518 N.W.2d at 240-41.

We first address whether Sams's comments regarding the effect of the drug constitute extraneous information. " 'Extraneous' information is information which a juror obtains from a non-evidentiary source, other than the 'general wisdom' we expect jurors to possess." *Id.* at 275, 518 N.W.2d at 241 (quoted source omitted). The supreme court has defined extraneous knowledge for purposes of RULE 906.06(2), STATS., as follows:

> The meaning of the word "extraneous" . . . is "existing or originating outside or beyond: external in origin: coming from the outside." The dictionary defines "information" as . . . "knowledge of a particular event or situation." Thus, "extraneous prejudicial information" is knowledge coming from the outside which is prejudicial.

*State v. Shillcutt,* 119 Wis. 2d 788, 794, 350 N.W.2d 686, 690 (1984). The term does not extend to statements which probe a juror's subjective mental processes. *Messelt,* 185 Wis. 2d at 275, 518 N.W.2d at 241.

We cannot agree with Heitkemper that juror Sams's statements about the effect of the drug taken by Sandra constitute outside knowledge. Jurors may rely on their common sense and life experiences during deliberations. This knowledge may include expertise

that a juror may have on a certain subject. *See State v. Aguilar*, 818 P.2d 165 (Ariz. Ct. App. 1991) (holding juror-physician's personal knowledge regarding blackouts not extraneous). Sams's use of his own experience and knowledge did not result in the bringing of outside evidence into the jury room. *See id.* The fact that unforeseen evidence falls within the expertise of a juror does not render it extraneous.

While we are not bound by the trial court's legal conclusions, we recognize the court's comments here as instructive:

> Mr. Sams' views and knowledge about the effects of this particular drug and maybe even a combination of other drugs . . . [while he obviously] knows more about what he is talking about than a layman, but any layman who was taking those drugs could have come up with the same conclusion . . . .

The effect of a drug is something an average person could have in his or her general knowledge. The fact that Sams happened to be trained in pharmacology does not make his life experiences extraneous.

Accordingly, we conclude that the proffered evidence is not extraneous under § 906.06(2), STATS., and therefore not competent. We need not make further inquiry. *See Casey*, 166 Wis. 2d at 346, 479 N.W.2d at 253.

### UNANIMOUS VERDICT

Heitkemper next argues that he is entitled to a new trial because he was denied his constitutional right to a unanimous jury verdict. *See Holland v. State*, 91 Wis. 2d 134, 138, 280 N.W.2d 288, 290 (1979) (holding that the constitutional guarantee of the right to a

jury trial includes the right to a unanimous verdict), *cert. denied*, 445 U.S. 931 (1980). We briefly set forth the facts relevant to Heitkemper's unanimity argument.

During summation, Heitkemper's counsel argued that Heitkemper only slapped C.H. in the face with an open hand and that this could not be considered felonious conduct. The State responded in part as follows:

> I'd like to take up first the last point, that [Heitkemper's attorney] made, which is that a slap in the face is not felonious conduct. . . . You can look at the jury instructions and find that slap alone is felonious conduct. . . . And the elements of physical abuse of a child are that the defendant caused bodily harm to [C.H.]. . . . You heard his wife testify about how he was angry on that morning; that slap could be bodily pain and that slap could be a felony. There is no question about it.

After summation, the court instructed the jury on the State's burden of proof as to the elements of physical abuse of a child under § 948.03(2)(b), STATS., as follows:

> Before the defendant may be found guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present. First, that the defendant caused bodily harm to [C.H.]. Second, that the defendant intentionally caused such harm. Third, that [C.H.] had not attained the age of 18 years at the time of the alleged offense.

The court went on to describe in greater detail each element of the crime. The court also instructed the jury on the penalty enhancer under § 948.03(5) and the defense of parental privilege, *see* § 939.45(5), STATS.;

WIS J I—CRIMINAL 950. The court concluded with the following unanimity instruction: "This is a criminal, not a civil case; therefore, before the jury may return a verdict which may be legally received, such verdict must be reached unanimously. In a criminal case all 12 jurors must agree in order to arrive at a verdict."

Our supreme court has adopted the logic and analysis of *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977), when deciding jury unanimity issues. *See Manson v. State*, 101 Wis. 2d 413, 429 n.6, 304 N.W.2d 729, 737 (1981). The test for determining whether a defendant's right to a unanimous jury verdict has been denied has been described by the court as follows:

> The first step is to determine whether the jury has been presented with evidence of multiple crimes or evidence of alternate means of committing the *actus reus* element of one crime. If more than one crime is presented to the jury, unanimity is required as to each. If there is only one crime, jury unanimity on the particular alternative means of committing the crime is required only if the acts are conceptually distinct. Unanimity is not required if the acts are conceptually similar.

*State v. Lomagro*, 113 Wis. 2d 582, 592, 335 N.W.2d 583, 589 (1983) (citations omitted).

Heitkemper contends that in light of the prosecutor's comments during summation, "[i]f some jurors believed that [he] struck [C.H.] with a board and others believed it was with an open hand, then [he] was denied his constitutional right to a unanimous verdict."[3] This argument is based on the belief that the

---

[3] The State preliminarily contends that because Heitkemper did not object at the time, move to strike, move for a

evidence presented two conceptually different and conflicting acts. As to one act, Heitkemper admitted that he struck C.H. with an open hand, but claimed the parental privilege as a defense. As to the other act, Heitkemper denied ever hitting C.H. with a stick in the arm, back or legs, and presented a defense that C.H. had fallen on a motor the night before which caused his bruises.

Our supreme court has previously addressed analogous arguments as applied to a battery case. In *State v. Giwosky*, 109 Wis. 2d 446, 326 N.W.2d 232 (1982), the defendant was charged with one count of battery as the result of a fight with the victim. *Id.* at 448-49, 326 N.W.2d at 234. The evidence at trial indicated that the victim was injured as a result of a thrown log and then various punches and kicks. *Id.* at 449-50, 326 N.W.2d at 234. The court concluded that it was proper for the jury to consider the incident as one continuous event, *id.* at 457, 326 N.W.2d at 238, and that the acts of throwing a log and punching and kicking were not conceptually distinct ways of committing battery, *id.* at 458, 326 N.W.2d at 238. *See also Lomagro*, 113 Wis. 2d

mistrial or object to the jury instructions, he waived any right to review any alleged unanimity problem arising from the prosecutor's rebuttal. We disagree. The supreme court has held that "[t]he right to a unanimous verdict . . . is so fundamental that it cannot be waived." *Holland v. State*, 87 Wis. 2d 567, 597-98, 275 N.W.2d 162, 177 (1979), *cert. denied*, 445 U.S. 931 (1980). Further, the supreme court has recognized that when a defendant raises unanimity questions, a defendant's failure to object at trial should not preclude him or her from raising them on appeal because the right to a unanimous verdict goes directly to the integrity of the fact-finding process. *State v. Baldwin*, 101 Wis. 2d 441, 446, 304 N.W.2d 742, 746 (1981). Accordingly, we address the merits of Heitkemper's unanimity claim.

at 593, 335 N.W.2d at 590 (holding that multiple acts of sexual intercourse over a two-hour period were conceptually similar and therefore unanimity as to each act was not required).

Based upon the rationale of *Giwosky*, we conclude that Heitkemper's actions are not practically or legally separable or distinct. *See Giwosky*, 109 Wis. 2d at 458, 326 N.W.2d at 238. There is no more of a conceptual distinction between being assaulted with a thrown log or a punch than by being abused with a board or an open hand. *See Lomagro*, 113 Wis. 2d at 594, 335 N.W.2d at 590. Here, unanimity was achieved because the entire jury agreed that Heitkemper intentionally committed an unprivileged act which caused bodily harm. *Giwosky*, 109 Wis. 2d at 451, 326 N.W.2d at 235.

*By the Court.*—Judgment and order affirmed.