Kathleen J. ANDERSON and Larry A. Anderson,
Plaintiffs-Respondents,

v.

BURNETT COUNTY and Wisconsin County Mutual
Insurance Corporation, Defendants-Petitioners,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Intervenor-Plaintiff-Respondent.

Court of Appeals

*No. 96–0954. Submitted on briefs November 29,
1996.—Decided December 27, 1996.*

(Also reported in 558 N.W.2d 636.)

For the defendants-petitioners the cause was submitted on the briefs of *Michael F. Durst* and *Terri L. Lehr* of *Weiby, Maki, Durst, Ledin, Bick & Lehr, S.C.*, Superior.

For the plaintiffs-respondents the cause was submitted on the brief of *Charles B. Harris* and *Theresa B. Laughlin* of *Doar, Drill & Skow, S.C.*, Baldwin.

For the intervenor-plaintiff-respondent the cause was submitted on the brief of *James R. Johnson* of *Lommen, Nelson, Cole & Stageberg, P.A.*, Hudson.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Burnett County appeals an order for a new trial in the interest of justice.[1] Burnett County alleges that the court incorrectly based its decision to grant a new trial in the interest of justice based upon information presented during a hearing held on a motion to impeach a jury verdict in favor of Burnett County. Because we conclude that the statements attributable to the jury are not competent to impeach the jury verdict, the court erred by basing its order for a new trial in the interest of justice on the evidence presented at that hearing. Accordingly, we reverse the order for a new trial and direct that judgment be entered upon the jury verdict.

Kathleen and Larry Anderson filed a claim alleging that Kathleen sustained personal injuries and the loss of her unborn fetus in a motor vehicle accident

---

[1] Leave to appeal was granted by this court on April 23, 1996.

caused by the negligent maintenance and repair of the roadway where the accident occurred. The case was tried before a jury, which resulted in a verdict finding neither Kathleen nor Burnett County causally negligent. Shortly after reaching its verdict, the foreperson, Carla Bockover, sent a letter to the trial court complaining about some of the jurors' statements made during jury deliberation. The information disclosed by the letter attributed the following comments to one or more of the jurors:

[1] I can't believe you are in her favor when she caused you to lose 3 days of business[;]

[2] If we find in her favor, and the County has to pay, our TAXES will go up[;]

. . . .

[3] Why should we give her Dad any money, he was just going to let her die, they are Jahovas' [sic] Witness[es;]

[4] Kathleen must not be a very decent daughter . . . because her mother wasn't in the Courtroom very much;

[5] NO TEENAGER is a responsible driver[;]

[6] Kathleen's [counsel is an] . . . Ambulance Chaser[;] and

[7] Five jurors . . . worked for the same company, and [they indicated] that they couldn't disagree with each other because they had to face each other at work.

The trial court held a hearing and received evidence in regard to these comments. After the evidentiary hearing, the court concluded that the comments represented neither extraneous information nor reflected outside influences so as to fall within the

591

parameters of § 906.06(2), STATS. The court, however, concluded that a new trial was warranted in the interest of justice based upon the evidence received at the hearing to impeach the jury's verdict and ordered a new trial in the interest of justice.

The first step in determining whether a jury verdict may be impeached is to determine whether the evidence offered is competent. *State v. Heitkemper*, 196 Wis. 2d 218, 223, 538 N.W.2d 561, 563 (Ct. App. 1995). If a juror is competent to testify as to the deliberations of the jury panel, the evidence is admissible at a hearing on a motion for a new trial and the court may then consider whether the evidence discloses sufficient grounds to overturn the verdict or prejudice. *Castaneda v. Pederson*, 185 Wis. 2d 200, 208-12, 518 N.W.2d 246, 249-51, (1994). If the proffered juror testimony is not competent, no further inquiry is necessary. *State v. Casey*, 166 Wis. 2d 341, 346, 479 N.W.2d 251, 253 (Ct. App. 1991). Section 906.06(2), STATS., controls the question of competency of juror testimony:

> **(2)** INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was

improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

It is clear from the language of the statute that no juror is competent to testify regarding the mental processes of the jurors during jury deliberation. A juror may testify only as to improper extraneous information that was considered during deliberation. This very restricted rule of competency is predicated upon the need for finality of jury verdicts. If a verdict could be impeached by evidence concerning the mental process of the jurors, no matter how mistaken or inappropriate that process may be, all jury verdicts would be subject to collateral attack. *State v. Shillcutt*, 119 Wis. 2d 788, 803-04, 350 N.W.2d 686, 694 (1984). In addition, the rule of competency encourages free and open discussion among jurors and discourages harassment of jurors by a losing party seeking to set aside the jury verdict. *Id.* Wisconsin's public policy strongly supports the finality of jury verdicts because it is essential to the viability of the jury as an institution integral to our judicial system. *Id.* at 793, 350 N.W.2d at 689.

The sole areas where jurors are competent to testify concerns extraneous information that was considered during the jury deliberations or outside influences. Section 906.06(2), STATS. Extraneous information is information from a nonevidentiary source that is not part of the general life experiences jurors bring to the jury room. In *Shillcut*, our supreme court defined extraneous information as " 'existing or originating outside or beyond: external in origin: coming from the outside.' " *Id.* at 794, 350 N.W.2d at

690 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY at 80 (1976)). The court further defined " 'information' as 'knowledge communicated by others or obtained from investigation, study, or instruction' or 'knowledge from a particular event or situation.' " *Id.* Thus, " 'extraneous prejudicial information' is knowledge coming from the outside which is prejudicial." *Id.*

The burden of demonstrating that the jury considered extraneous information that was prejudicial rests upon the party seeking to set aside the jury verdict. *State v. Poh*, 116 Wis. 2d 510, 520, 343 N.W.2d 108, 114 (1984). That burden is to demonstrate that the information considered was extraneous information, that the extraneous information was improperly brought to the jury's attention and that it was prejudicial. *Id.*

The threshold question is whether the information identified by the foreperson's letter consisted of extraneous information. We conclude that it did not and, accordingly, no juror was competent to testify as to the nature of the deliberative process that occurred among the various jurors in reaching their verdict. *See State v. Messelt*, 185 Wis. 2d 255, 275, 518 N.W.2d 232, 241 (1994). We note that unfortunately many of the comments evince a mean-spiritedness and often an erroneous perception. For example, the comment that Anderson could not have been a very decent daughter because her mother was not in the courtroom is not only offensive, but fails to consider her mother's absence was by virtue of a sequestration order made by the trial court that precluded her attendance. Nonetheless, the impression of the jurors as to the nature, character or trustworthiness of any party or witness is a matter for the jurors to determine based

upon their own mental processes, including their experiences in life.

No matter how mistaken the perception of a juror may be, it is part of the human condition that all jurors bring to the jury deliberations. While we do not condone a juror reaching any conclusion based upon such subjective impressions, the conclusion was not a product of extraneous information because the juror who spoke these words was reflecting upon the juror's observations regarding the relationship between the daughter and mother, including the juror noting the mother's absence from significant portions of the trial. While the juror's conclusions were wrong, they reflected the specific juror's mental processes and are not the result of extraneous information. Therefore, no testimony regarding this subject should have been received because no juror was competent to testify in this regard.

The same is true regarding the jurors' conclusions that if they find against Burnett County it might affect their tax rate and that Anderson was responsible for the jurors losing three days of business. It is unfortunate that these irrelevant factors were a consideration in the jurors' deliberative process, but they once again reflect the mental process of a specific juror and do not reflect extraneous information introduced into the jury room outside either the evidentiary hearing or the jurors' general knowledge.

Even more objectionable is the suggestion of general prejudice against teenagers in regard to how they operate a motor vehicle or prejudice against Anderson because of perceptions in regard to her attorney. Nonetheless, this too is a reflection of mental processes of specific jurors. Jurors take their human

condition into the jury room and preconceived prejudices may become a part of the jury deliberation process. Such attitudes should be identified during the impaneling of the jury and jurors who hold such prejudices should be excused from jury service. Once they are impaneled as part of the jury and are participating in the jury deliberation process, however, such comments are reflections of mental processes and are not the product of extraneous evidence or outside influences.

Finally, we consider the comment about the five jurors who worked for the same company and were reluctant to disagree because of their frequent contact in the future. Although this is a foolish reason, it too is a reflection of the specific attitudes of each of the five employees. It is a reason for their opinion, not a reflection of extraneous information derived from an outside source. No juror was competent to testify in regard to this factor because it reflects the mental processes of the jurors in question.

The one comment that is not so clearly the result of incompetent evidence concerns the suggestion that the jury should not award Anderson's father money for future medical expenses because they are Jehovah's Witnesses. If this comment is construed as a general prejudice toward a party's religious beliefs, it becomes an exception to the general rule that mental processes are not subject to inquiry. If the bias demonstrated goes to fundamental issues such as religion and presumably race, national origin and perhaps some other limited categories, the process is deemed so infirm that evidence of such bias is competent. *Shillcutt*, 119 Wis. 2d at 805-06, 350 N.W.2d at 695; *After Hour Welding, Inc. v. Laneil Management Co.*,

108 Wis. 2d 734, 739-40, 324 N.W.2d 686, 690 (1982). This showing of prejudice must demonstrate "such a magnitude of prejudice" so as to constitute "an obvious default of justice." *Shillcutt*, 119 Wis. 2d at 805, 350 N.W.2d at 695. The policy underlying this exception is that while we will accept the erroneous and even foolish reasoning of jurors as a reflection of the human condition that all jurors bring to the jury deliberation table, we will not tolerate such racial or religious prejudices that are violative of our fundamental beliefs of fairness and equality. *Id.* at 805-06, 350 N.W.2d at 695.

Evidence of such bias is admissible to protect the overall integrity of the judicial process. Accordingly, if the comment regarding Jehovah's Witnesses is a matter of religious prejudice, testimony concerning the comment and its role in jury deliberations would be competent to be received in evidence. The trial court correctly held a hearing and evidence was received in regard to this issue. After the hearing, the trial court concluded that this evidence was not competent. This finding implies that the religious comment did not reflect religious animus, but rather reflected a concern over the award of future medical expenses because of the general perception that Jehovah's Witnesses would not participate in ordinary medical care. *See Sohns v. Jensen*, 11 Wis. 2d 449, 453, 105 N.W.2d 818, 820 (1960). Because the context of the comment was unrelated to the jury's determination of negligence but was limited to the narrow issue of damages, the court's conclusion not to impeach the verdict based on that comment is supported by the evidence. *See Shillcutt*, 119 Wis. 2d at 805-06, 350 N.W.2d at 695. Having determined that none of the concerns identified

represent extraneous evidence, we conclude that no juror was competent to testify as to the nature of the deliberations or the reasons, why some or all of the jurors may have reached the results reflected in the verdict.

We must now determine whether the non-religious evidence, although incompetent, can provide a basis for the trial court's granting of a motion for a new trial in the interest of justice. If a witness is not competent to testify in regard to specific issues, no testimony may be received from them on the issues. *See Heitkemper*, 196 Wis. 2d at 223-24, 538 N.W.2d at 563. If the court erroneously permitted testimony regarding the issues, the evidence remains nonetheless inadmissible. Because we conclude that no witness was competent to testify in regard to any of the issues identified except the religious issue, reliance on this evidence is inappropriate.

In this case, the trial court properly concluded that none of the claims represented proof of extraneous influences on the jury's deliberation and, accordingly, denied the motion to impeach the jury verdict. The trial court, however, considered the incompetent evidence in making its determination to grant a new trial in the interest of justice. This is error.

We recognize that a decision to grant a new trial in the interest of justice is normally a matter submitted to the trial court's sound discretion. *State v. Eison*, 194 Wis. 2d 160, 171, 533 N.W.2d 738, 742 (1995). We review exercises of discretion with deference. *Wojkiewicz v. American Family Mut. Ins. Co.*, 33 Wis. 2d 351, 353-54, 147 N.W.2d 249, 250-51 (1967). A determination made upon an erroneous view of the law, however, is an erroneous exercise of discretion and

cannot be affirmed. *Jesse v. Danforth*, 169 Wis. 2d 229, 246, 485 N.W.2d 63, 69 (1992).

Here, the trial court erroneously believed that it could consider the evidence received at the jury impeachment hearing in making its determination as to whether to grant a new trial in the interest of justice. Because the witnesses were incompetent to testify as to these matters, no use of any type may be made of the evidence erroneously received at the jury impeachment hearing. Had the court properly determined in advance of the hearing that all the allegations except the one that may have reflected religious animus represented the mental process of the jurors, no evidentiary hearing would have been held on those issues.

We, therefore, conclude that the trial court erred by relying on the evidence received at the hearing to impeach the jury verdict and ordering a new trial in the interest of justice. We are required to reverse the order and direct the entry of judgment based upon the jury verdict.

*By the Court.*—Order reversed and cause remanded with directions.