PER CURIAM.
¶1 Dontre Johnson appeals an order denying his WIS. STAT. § 974.06 (2015-16)[1] motion for postconviction relief. Johnson claims he is entitled to a new trial because one of the jurors at his trial was objectively biased and because his trial attorney was ineffective by failing to question the potential jurors during voir dire about bias toward nontestifying defendants. Johnson also claims that his first postconviction attorney was ineffective by failing to investigate and discover the above issues regarding juror bias and ineffective assistance of trial counsel. Finally, Johnson argues he is entitled to a new trial in the interest of justice under WIS. STAT. § 752.35.
¶2 We conclude Johnson's prior postconviction attorney was not ineffective by failing to investigate and discover the claims regarding juror bias and ineffective assistance of trial counsel that Johnson now raises in the present appeal. In light of that conclusion, we further conclude that Johnson's juror bias and ineffective assistance of trial counsel claims are procedurally barred because he has not presented a sufficient reason for failing to raise them in the prior postconviction proceedings. We also conclude Johnson has failed to establish that he is entitled to a new trial in the interest of justice. We therefore affirm the order denying postconviction relief.
BACKGROUND
¶3 An Amended Information charged Johnson with two counts of repeated sexual assault of a child and two counts of exposing genitals to a child. Johnson pled not guilty to each of the charges against him, and his case proceeded to trial in September 2011.
¶4 During voir dire, the prosecutor explained that Johnson's case involved allegations of sexual assaults committed against two girls between the ages of six and twelve. The prosecutor asked, "[J]ust knowing those are the facts you are gonna hear two girls describe, does anybody here think they would not be able to sit on this jury and hear this case?" In response to that question, Juror 24 reported that she had been a victim of sexual assault as a child and therefore did not believe she could be impartial.[2]
¶5 The prosecutor then asked whether any of the other jurors had been victims of sexual assault or had family members or close friends who were victims of sexual assault. Juror 22 responded that her son and daughter had been sexually assaulted at ages nine and ten. When asked whether she could nevertheless "be fair and impartial," Juror 22 replied, "I would think so." Juror 22 did not reveal that she herself had been sexually assaulted as a child. She was ultimately selected to serve on Johnson's jury.
¶6 The State voluntarily dismissed one of the exposing genitals charges during the course of Johnson's trial. The remaining three counts went to the jury on September 14, 2011. At approximately 4:40 p.m., the jurors sent a note to the circuit court asking whether they would be made to stay past 5:00 p.m. In response, the court informed the jurors they "would not be made to stay past 5:00." Approximately ten minutes later the jury informed the court it had reached a verdict.
¶7 The circuit court was concerned that the jury may have rushed to reach its verdict in order to be finished by 5:00. Accordingly, upon bringing the jurors back into the courtroom, the court asked whether any juror felt that he or she had "not had a sufficient time for the deliberation process." The only juror to respond was Juror 20, who stated, "It could have been a little more time, but, you know. It could have been, without looking at me like I'm an idiot." The court then questioned Juror 20 further about whether there was a "sufficient amount of time" to deliberate, and Juror 20 agreed that the amount of time was sufficient. The jury found Johnson guilty of all three of the charges against him.
¶8 Attorney John Wasielewski was subsequently appointed to represent Johnson in postconviction proceedings. He filed a postconviction motion on Johnson's behalf raising two arguments. First, the motion asked the circuit court to vacate Johnson's convictions for repeated sexual assault of a child on the grounds that the "delay in charging and broad periods of time in which [the sexual assaults were] alleged to have occurred" deprived Johnson "of his right to adequate notice so as to be able to prepare a defense." In the alternative, if the court declined to vacate the sexual assault convictions, the motion asked the court to vacate the exposing genitals conviction because it was contrary to WIS. STAT. § 948.025(3).
¶9 The circuit court denied Johnson's motion to vacate the repeated sexual assault convictions. However, the court agreed that the exposing genitals conviction violated WIS. STAT. § 948.025(3), and it therefore vacated that conviction. Johnson then appealed from his judgment of conviction and from that portion of the circuit court's order denying his motion to vacate the repeated sexual assault convictions. We affirmed on direct appeal.
¶10 Johnson subsequently obtained new postconviction counsel, who hired an investigator to question Juror 20 about his postdeliberation exchange with the circuit court and about whether the jurors had been able to hear the witnesses' testimony. According to the investigator's report, during the course of that investigation, Juror 20 revealed that Juror 22 had told the other jurors during deliberations that "she was raped by her brother and believes the child's testimony." Juror 20 also told the defense investigator that, "[i]n the end, [Juror 20] found the defendant guilty, because, the defendant did not testify." Juror 20 stated he "understood the defendant had a right not to testify, however, he wanted to hear from the defendant."
¶11 On May 5, 2016, Johnson moved for postconviction relief under WIS. STAT. § 974.06, seeking a new trial. His motion presented three arguments. First, Johnson contended Juror 22 was objectively biased because she failed to reveal during voir dire that she had been a victim of sexual assault as a child and because she "argued to her fellow jurors for a conviction because she believed the victims to be credible by virtue of her experience as a victim of child sexual assault." Second, Johnson argued his trial counsel, attorney Michael Chernin, was ineffective by failing to ask the potential jurors during voir dire "whether they would be able to fairly decide Johnson's guilt even if he exercised his right to remain silent, which resulted in a biased juror being seated who convicted Johnson because he did not testify." Third, Johnson argued attorney Wasielewski was ineffective "by failing to investigate and then raise the aforementioned grounds for relief." In response, the State argued Johnson's claims were procedurally barred or, in the alternative, failed on the merits.
¶12 The postconviction court held a two-day evidentiary hearing on Johnson's WIS. STAT. § 974.06 motion.[3] Johnson did not produce Juror 20 to testify at the hearing. The court refused to admit the defense investigator's testimony about Juror 20's statements, concluding those statements constituted inadmissible hearsay.
¶13 At the close of the hearing, the postconviction court denied Johnson's WIS. STAT. § 974.06 motion on the merits. The court first concluded that attorney Wasielewski did not perform deficiently by failing to investigate and discover any issues regarding juror bias. Johnson argued attorney Wasielewski would have uncovered the alleged bias had he investigated Johnson's claims that a juror was sleeping during trial, that jurors could not hear certain testimony, and that the jurors lacked adequate time to deliberate. However, the postconviction court concluded there was "nothing about any one of those issues or even those issues in combination that would trigger an attorney to believe that there was a potential issue of merit to be investigated." The court further stated that, even if attorney Wasielewski had investigated those topics, it was an "unsupportable leap" to conclude that he would have discovered any issues pertaining to juror bias. The court also concluded that Juror 22 was not objectively biased, and, accordingly, attorney Wasielewski's failure to investigate and discover her alleged bias did not prejudice Johnson.
¶14 As for Johnson's claim that attorney Chernin was ineffective by failing to question the potential jurors about their ability to be impartial in the event that Johnson did not testify, the postconviction court concluded counsel's failure to do so was not "inherently deficient." Regardless, the court concluded any deficiency in that regard was not prejudicial because the court had expressly instructed the jury that it could not use Johnson's silence against him.
¶15 Johnson moved for reconsideration of the postconviction court's decision to exclude Juror 20's out-of-court statements to the defense investigator. On May 17, 2017, the court entered a written order denying both Johnson's postconviction motion and his motion for reconsideration. Johnson now appeals.
DISCUSSION
I. Johnson has not established that attorney Wasielewski was ineffective.
¶16 On appeal, Johnson renews his argument that attorney Wasielewski was ineffective by failing to investigate and discover the alleged bias on the part of Jurors 20 and 22, as well as attorney Chernin's ineffectiveness by failing to question the jury panel regarding their ability to remain impartial in the event that Johnson chose not to testify. "Whether counsel was ineffective is a mixed question of fact and law." State v. Balliette , 2011 WI 79, ¶ 19, 336 Wis. 2d 358, 805 N.W.2d 334. We will uphold the postconviction court's findings of fact unless they are clearly erroneous, but the ultimate conclusion as to whether counsel was ineffective presents a question of law that we review independently. Id.
¶17 To prove that attorney Wasielewski was ineffective, Johnson must establish both that attorney Wasielewski's performance was deficient and that the deficient performance prejudiced Johnson's defense. See Strickland v. Washington , 466 U.S. 668, 687 (1984) ; see also Balliette , 336 Wis. 2d 358, ¶ 28 (explaining that the Strickland analysis applies to claims alleging ineffective assistance of postconviction counsel). To demonstrate deficient performance, a defendant must point to specific acts or omissions by his or her attorney that were "outside the wide range of professionally competent assistance." Strickland , 466 U.S. at 690. To demonstrate prejudice, a defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. If a defendant fails to satisfy one prong of this analysis, we need not address the other. Id. at 697.
¶18 Here, we need not address prejudice because we conclude attorney Wasielewski did not perform deficiently by failing to investigate and discover the issues Johnson now raises. Johnson argues there are "two specific things in the record ... justifying an investigation that would have disclosed the errors asserted herein." First, he asserts there were "multiple instances in which testimony may have been missed either because of a sleeping juror or inaudible witness." Second, he contends the "exchange between Juror 20 and the court at the end of the case, as well as Juror 20's comments about persons in the courtroom looking at him askance, warranted investigation." Had attorney Wasielewski investigated these issues, Johnson argues he would have discovered that: (1) Juror 22 was objectively biased; and (2) Juror 20 convicted Johnson based on his failure to testify, and attorney Chernin was therefore ineffective by failing to inquire during voir dire as to whether the potential jurors could remain impartial if Johnson exercised his right to remain silent. However, we agree with the postconviction court that nothing in the record would have caused a reasonable postconviction attorney "to believe that there was a potential issue of merit to be investigated."
¶19 Johnson correctly notes that a defendant's constitutional rights are violated when jurors are unable to hear the testimony of a material witness. See State v. Turner , 186 Wis. 2d 277, 285, 521 N.W.2d 148 (Ct. App. 1994). Nonetheless, as the postconviction court aptly noted, there is nothing in the record here to indicate that any of the jurors were unable to hear the testimony of a material witness during Johnson's trial. Although the attorneys and the circuit court at times indicated that they were having difficulty hearing the testimony of one of the victims, when that issue arose, the court and the prosecutor addressed it by asking the victim to speak up and speak into the microphone. The prosecutor also addressed the issue at times by repeating the victim's previous answer and then asking her to confirm that it was, in fact, her testimony.
¶20 In addition, the circuit court asked the jurors twice during Johnson's trial whether they could hear the victim's testimony. In response to the first inquiry, three jurors expressly responded that they could hear the victim, while a fourth stated, "It's tough." However, as the postconviction court noted, that statement was not tantamount to an assertion that the juror in question could not hear the victim's testimony; rather, it simply conveyed that it was somewhat difficult to hear the victim. In response to the juror's statement, the circuit court inquired, "It's tough but we're okay?" The juror did not respond that he or she was not "okay"-that is, that he or she was actually unable to hear the victim. Later on during the victim's testimony, the circuit court specifically asked the jurors to "let me know if you are having trouble hearing." Thereafter, none of the jurors raised any concerns about their ability to hear the victim.
¶21 On this record, the postconviction court concluded that, while the victim was speaking softly and was somewhat difficult to hear, there was nothing to indicate that any jurors were actually unable to hear her testimony. The court therefore concluded it was not reasonable to expect that, upon reading the trial transcript, attorney Wasielewski would have determined further investigation regarding that issue was warranted. We agree with the court's analysis.
¶22 As for Johnson's argument that attorney Wasielewski should have investigated Johnson's claim regarding a sleeping juror, the postconviction court observed that the only reference to a sleeping juror in the trial transcript occurred before the evidentiary portion of the trial. Our review of the transcript confirms that, before the first witness testified, the prosecutor informed the circuit court that one of the jurors had been sleeping during opening statements. In response, the circuit court stated it would "keep an eye on" the jurors going forward. Under these circumstances, the postconviction court explained that there would be
no reason for a lawyer to believe that though a juror was sleeping once that the same juror was sleeping at other points. If anything ... there would be a reason to believe that that [was not] true because the judge said she would be aware of that issue and the judge did not make-memorialize on the record that there were any problems.
The postconviction court therefore concluded the record would not have prompted a reasonable defense attorney to hire someone "to investigate whether that juror was sleeping." Once again, we agree with the postconviction court's analysis.
¶23 We similarly reject Johnson's argument that attorney Wasielewski performed deficiently by failing to investigate Juror 20's postdeliberation exchange with the circuit court. Johnson contends that exchange should have prompted attorney Wasielewski to investigate whether the jurors had sufficient time to deliberate. However, when the circuit court asked the jurors whether they had sufficient time to deliberate, Juror 20 was the only juror to raise a concern. Notably, Juror 20 did not state that the time for deliberation was insufficient. Instead, he initially told the court that there "could have been a little more time," but he subsequently confirmed that the jury had sufficient time to deliberate. On these facts, there was no basis for a reasonable postconviction attorney to believe that further investigation would have revealed any basis to challenge Johnson's convictions.
¶24 Johnson emphasizes that, when the circuit court initially asked whether the jurors had sufficient time to deliberate, Juror 20 provided a somewhat odd response, stating: "It could have been a little more time, but, you know. It could have been, without looking at me like I'm an idiot ." (Emphasis added.) We do not agree, however, that this ambiguous response was so concerning that failing to investigate it constituted deficient performance. Nothing about Juror 20's response to the court's question indicated that Juror 20 was not in agreement with the verdict.[4] And, as noted above, Juror 20 subsequently confirmed that he had adequate time to deliberate. As a result, attorney Wasielewski's failure to investigate Juror 20's response did not fall below an objective standard of reasonableness. The fact that a subsequent postconviction attorney went further and discovered apparently unrelated juror misconduct does not itself render attorney Wasielewski's representation inadequate. See State v. Robinson , 177 Wis. 2d 46, 56, 501 N.W.2d 831 (Ct. App. 1993) ("A defendant is not entitled to a perfect defense or the best defense, but only to one which gives him [or her] reasonably effective representation.").
¶25 In summary, we conclude attorney Wasielewski did not perform deficiently by failing to investigate whether the jurors could hear the testimony of one of the victims, whether a juror was sleeping during trial, and whether the jurors had sufficient time to deliberate. Moreover, while Johnson asserts that an investigation into those issues would necessarily have revealed bias on the part of Jurors 20 and 22, as well as attorney Chernin's allegedly ineffective assistance, that assertion is purely speculative. We therefore reject Johnson's argument that attorney Wasielewski was ineffective by failing to investigate and discover the juror bias and ineffective assistance of counsel issues that Johnson now raises.
II. Johnson's claims regarding juror bias and ineffective assistance of trial counsel are procedurally barred.
¶26 As noted above, Johnson also argues that he is entitled to a new trial because Juror 22 was objectively biased. He further argues that attorney Chernin was ineffective by failing to inquire during voir dire whether the potential jurors could be impartial if Johnson exercised his right to remain silent, and that attorney Chernin's failure to do so resulted in a biased juror-Juror 20-serving on Johnson's jury.
¶27 We conclude both of these claims are procedurally barred under WIS. STAT. § 974.06(4) and State v. Escalona-Naranjo , 185 Wis. 2d 168, 517 N.W.2d 157 (1994). "All grounds for relief available to a person under [ § 974.06 ] must be raised in his or her original, supplemental or amended motion." Sec. 974.06(4). Successive postconviction motions and appeals are procedurally barred, unless the defendant can show a sufficient reason why the newly alleged errors were not previously raised. Escalona-Naranjo , 185 Wis. 2d at 185. Whether a defendant's arguments are procedurally barred is a question of law that we review independently. State v. Tolefree , 209 Wis. 2d 421, 424, 563 N.W.2d 175 (Ct. App. 1997).
¶28 Although it is undisputed that Johnson did not raise his arguments regarding juror bias and ineffective assistance of trial counsel on direct appeal, Johnson contends he has demonstrated a sufficient reason failing to do so-namely, that attorney Wasielewski was ineffective by failing to investigate and discover them. Johnson is correct that ineffective assistance of postconviction counsel can constitute a sufficient reason for failing to raise an argument earlier. See State v. Romero-Georgana , 2014 WI 83, ¶ 36, 360 Wis. 2d 522, 849 N.W.2d 668. However, we have already concluded that attorney Wasielewski was not ineffective by failing to investigate and discover the issues Johnson now raises. Johnson does not cite any other reason-let alone a sufficient reason-for failing to raise his present arguments regarding juror bias and ineffective assistance of trial counsel in his previous postconviction motion and appeal. We therefore agree with the State that those arguments are procedurally barred.
III. Johnson has failed to establish that he is entitled to a new trial in the interest of justice.
¶29 Finally, Johnson argues he is entitled to a new trial in the interest of justice under WIS. STAT. § 752.35. As relevant here, that statute permits us to reverse a judgment or order "if it appears from the record ... that it is probable that justice has for any reason miscarried." Id. However, we exercise our discretionary reversal power sparingly, and "only in the most exceptional cases." State v. Schutte , 2006 WI App 135, ¶ 62, 295 Wis. 2d 256, 720 N.W.2d 469.
¶30 Johnson argues justice has miscarried here because he "should never have been found guilty by a jury that included a single biased juror-let alone two," and because "[j]ustice demands that a person who suffers a biased jury be tried anew." While Johnson's arguments regarding juror bias are concerning at first glance, in order to obtain a new trial due to a claimed miscarriage of justice Johnson must demonstrate that there is a substantial probability that a new trial would produce a different result. See Vollmer v. Luety , 156 Wis. 2d 1, 16, 456 N.W.2d 797 (1990) ; see also State v. Kucharski , 2015 WI 64, ¶ 5, 363 Wis. 2d 658, 866 N.W.2d 697. Johnson has failed to present a developed argument explaining why that is the case. Indeed, he does not even cite or acknowledge the requirement that he establish a substantial probability of a different result. He does not discuss the strength of the evidence against him or explain why, in light of that evidence, it is substantially probable that a new trial before a different jury would produce a different outcome. We need not address undeveloped arguments, see State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992), and we will not abandon our neutrality to develop arguments for a party, see Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82.
¶31 There are two other problems with Johnson's discretionary reversal argument. First, while Johnson relies on Juror 20's statements to the defense investigator to support his argument that Juror 20 was biased against him because of his decision not to testify, the postconviction court ruled that those statements were inadmissible. We conclude the court properly exercised its discretion in that regard. See State v. Vollbrecht , 2012 WI App 90, ¶ 25, 344 Wis. 2d 69, 820 N.W.2d 443 ("The admissibility of evidence is committed to the circuit court's discretion and we will not reverse such decisions if there is a reasonable basis in the record.").
¶32 Johnson assumes that Juror 20's statements to the defense investigator were competent evidence of juror bias. However, WIS. STAT. § 906.06(2) provides that, upon an inquiry into the validity of a verdict,
a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.
Juror 20's statements about his consideration of Johnson's decision not to testify went to Juror 20's mental processes in connection with the verdict, rather than to any extraneous information or outside influence that affected the jury's deliberations. His statements are therefore not competent evidence of juror bias.[5]
¶33 Second, Johnson argues that Juror 22 was biased against him by virtue of her past experience as a victim of child sexual assault and that her presence on the jury was therefore fundamentally unfair to him. We concede that, in light of Juror 22's failure to disclose her history as a child sexual assault victim during voir dire, her presence on the jury is somewhat concerning. Nonetheless, Juror 22 revealed during voir dire that her children had been victims of sexual assault, and she affirmatively stated that experience would not prevent her from being impartial. Moreover, the postconviction court found credible Juror 22's postconviction testimony that she did not intend to hide any information during voir dire, that she was not attempting to be dishonest by failing to reveal her own sexual assault, and that she did not have "an axe to grind" because of that experience.
¶34 In addition, while Johnson argues Juror 22 used her experience as a child sexual assault victim to influence the other jurors, the postconviction court reasoned:
There is no evidence that Juror 22 even disclosed to the people in the jury room at all that she had been sexually assaulted. All she said was, that she knew how they could feel. That could have been very well from her own children's experience, which the other jurors did know about. So it's not even a circumstance where it could have created some kind of indirect pressure on other jurors or even where it could have been misused.
Johnson persuasively argues that Juror 22 must have disclosed her own sexual assault to the jurors during deliberations or Juror 20 would not have commented on that issue when approached by Johnson's investigator. However, as discussed above, Juror 20's testimony is not in the record. Based on Juror 22's postconviction hearing testimony, the court's finding that she did not disclose her own sexual assault to the other jurors during deliberations is not clearly erroneous. Johnson's claim that Juror 22's bias affected the other jurors during their deliberations is therefore speculative.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Juror 24 was ultimately struck from the jury panel for cause.

For the remainder of this opinion, we refer to the court that presided over Johnson's trial as the "circuit court," and we use "postconviction court" when referring to the court that decided Johnson's Wis. Stat. § 974.06 motion.

The record reflects that the jury was polled, and each juror-including Juror 20-indicated his or her agreement with the verdict.

In his reply brief, Johnson cites Anderson v. Burnett County , 207 Wis. 2d 587, 596, 558 N.W.2d 636 (Ct. App. 1996), in which we stated, "If the bias demonstrated goes to fundamental issues such as religion and presumably race, national origin and perhaps some other limited categories, the process is deemed so infirm that evidence of such bias is competent," despite the general prohibition in Wis. Stat. § 906.06(2). We explained that the "policy" underlying this exception is that "while we will accept the erroneous and even foolish reasoning of jurors as a reflection of the human condition that all jurors bring to the jury deliberation table, we will not tolerate such racial or religious prejudices that are violative of our fundamental beliefs of fairness and equality." Anderson , 207 Wis. 2d at 597. The instant case, however, does not involve a juror who expressed bias based on a party's race, religion, national origin, or any other similar characteristic. Johnson does not cite any case holding that a juror's statement regarding his or her consideration of a defendant's failure to testify is competent evidence that can be used to attack a jury's verdict.